SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Luis Perez v. Zagami, LLC** (A-36-12) (071358)

**[NOTE:  This is a companion case to Cottrell v. Zagami, LLC also filed today.]**

**Argued January 21, 2014 -- Decided May 21, 2014**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court addresses whether the New Jersey Civil Rights Act (Act or CRA), N.J.S.A. 10:6-2(c), authorizes a private right of action against a person who is not acting under "color of law."

In 2006, Zagami, LLC (Zagami) applied to the Borough of Glassboro (Borough) for a renewal of its liquor license.  Luis Perez, a Borough resident, opposed the renewal and alleged that Zagami had committed several serious infractions.  At a license renewal hearing, Perez testified that Zagami flouted fire-safety regulations, served alcohol to visibly intoxicated patrons, and encouraged bouncers to physically harm rowdy customers.  Zagami disputed the allegations and the Borough Council voted to renew Zagami's liquor license.

Thereafter, Zagami filed a defamation suit against Perez for his statements at the liquor license renewal hearing.  Perez filed a motion to dismiss, which the trial court denied.  The Appellate Division reversed the trial court's judgment and dismissed the defamation complaint with prejudice, finding that Perez's remarks were made in the course of a quasi-judicial proceeding and thus were entitled to absolute immunity.  Zagami, LLC v. Cottrell, 403 N.J. Super. 98 (App. Div. 2008), certif. denied, 198 N.J. 309 (2009).

On July 26, 2010, Perez filed a complaint against Zagami for malicious use of process, arguing that Zagami had filed its defamation complaint to punish Perez for speaking out at the hearing and to discourage his participation in future public proceedings.  Zagami moved to dismiss the complaint, and Perez filed a cross-motion to include a claim under the CRA and to add a defendant.  The trial court granted Zagami's motion to dismiss the malicious use of process claim and denied Perez's cross-motion to amend the complaint.  In respect of the CRA claim, the trial court concluded specifically that the Act only authorizes private suits against persons acting under "color of law."

On appeal, the Appellate Division reversed both determinations of the trial court.  First, the panel reversed the trial court's grant of Zagami's motion to dismiss the malicious use of process claim, finding that Zagami's defamation suit was not supported by probable cause and that Zagami should have known that Perez's statements were privileged when it filed suit.  Second, the panel allowed Perez to amend his complaint to name an additional defendant and to include a CRA cause of action against Zagami for a "deprivation" of his civil rights.   The panel reasoned that N.J.S.A. 10:6-2(c) has two distinct clauses, and that the "color of law" language relied upon by the trial court to deny Perez's motion only applies to the clause governing "interference" claims.

The Court granted certification to review whether the CRA permits a private right of action against an individual who is not acting under color of law.  213 N.J. 530 (2013).  The Court also granted certification in Maryann Cottrell's case, also decided today, on the same issue.  Cottrell v. Zagami, Inc., 215 N.J. 483 (2013).

**HELD**:  A private CRA cause of action only may be pursued against persons acting under "color of law"; the Attorney General, however, is authorized to file CRA actions against persons whether or not they acted under "color of law."

1. The CRA contains two subsections authorizing causes of action that may be brought by the Attorney General:  Subsection (a) governs claims against someone who, "whether or not acting under color of law, subjects or causes to be subjected any other person to the deprivation of" protected civil rights.  N.J.S.A. 10:6-2(a) (emphasis added).  Subsection (b) governs claims against someone who, "whether or not acting under color of law, interferes or attempts to interfere" with the exercise of protected civil rights.  N.J.S.A. 10:6-2(b) (emphasis added).  (p. 6).

1

2. The Act also authorizes a private right of action for deprivations of or interference with protected civil rights. N.J.S.A. 10:6-2(c) ("Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.") (emphasis added). At issue in this appeal is whether all private actions filed under subsection (c) require the presence of state action, or whether the "under color of law" condition is limited to claims based on interference with protected civil rights. (pp. 7-10).

3. Questions of statutory construction are reviewed de novo. "'When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent.'" State v. Buckley, 216 N.J. 249, 263 (2013) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). Although the Court begins its analysis with the statute's plain language, the punctuation of N.J.S.A. 10:6-2(c) confounds its clear meaning. Specifically, the absence of a comma before the phrase "by a person acting under color of law" makes it unclear whether the phrase applies to all private actions, or solely to interference claims. The grammatical construction of N.J.S.A. 10:6-2(c) would seem to suggest intent to divide the section into two distinct clauses – the first for deprivation claims and the second for interference claims – with the "color of law" language applying only to the interference clause. However, punctuation is not necessarily controlling in the search for legislative intent. See Carisel v. King, 2 N.J. 45, 50 (1949). (pp. 11-12).

4. When construing a statute, "the intention of the Legislature is to be derived from a view of the entire statute" and all provisions "must be read together in light of the general intent of the act." Hubner v. Spring Valley Equestrian Ctr., 203 N.J. 184, 195 (2010). As such, the Court presumes that the Legislature created subsections (a), (b), and (c) as a cohesive whole. If the Legislature intended for private claims based on the deprivation of civil rights to be actionable against private citizens, whether or not acting under color of law, it could have clearly expressed that intention in subsection (c) as it did in subsections (a) and (b). Indeed, dividing subsection (c) into two distinct clauses – only the second of which is subject to the "color of law" provision – would require acceptance of a reading that defies the clarity of expression used by the Legislature in subsections (a) and (b). In addition, it would render the first clause of subsection (c) – involving a private party's deprivation claim – as the only one in N.J.S.A. 10:6-2 not to have an identified actor who committed the violation. (pp. 12-14).

5. Because the language of N.J.S.A. 10:6-2(c) "does not lead to a single, clear meaning," the Court looks to the relevant legislative history. State v. O'Driscoll, 215 N.J. 461, 474 (2013). The CRA, enacted in 2004, was designed as a "State analog to the federal civil rights statute codified at 42 U.S.C.A. [§] 1983." Governor's Statement on Signing Assembly Bill No. 2073 (Sept. 10, 2004). With regard to the scope of subsection (c), the bill sponsors explained that "any individual may bring a [private] civil action if his rights, privileges or immunities have been deprived, interfered with or attempted to be interfered with by threats, intimidation or coercion by a person acting under color of law." S. 1558 (Sponsor's Statement), 211th Leg. (May 6, 2004); Assemb. 2073 (Sponsor's Statement), 211th Leg. (Feb. 9, 2004). The sponsors therefore regarded state action as an essential component of interference and deprivation claims under subsection (c). That construction also comports with the CRA's purpose as a state law analogue to Section 1983, which only permits actions against persons acting "under color of" law. (pp. 14-16).

6. In sum, the phrase "person acting under color of law" in N.J.S.A. 10:6-2(c) applies to deprivation as well as to interference claims brought by private party plaintiffs under the Act, notwithstanding the lack of a comma preceding the phrase "by a person acting under color of law." The contrary interpretation urged by Perez would result in the deprivation action by a private party becoming the only cause of action in the statute for which the Legislature has not identified a permissible defendant. Had the Legislature intended to permit private actions for deprivations of protected rights irrespective of state action, it would have done so expressly. By interpreting the phrase "persons acting under color of law" to define persons against whom both deprivation and interference (or attempted interference) claims may be brought, the entire wording of subsection (c) is given meaning and the private cause of action is aligned with the federal cause of action authorized by Section 1983. (pp. 17-21).

The judgment of the Appellate Division is **REVERSED** in part.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

LUIS PEREZ,

    Plaintiff-Respondent,

        v.

ZAGAMI, LLC, d/b/a THE
LANDMARK AMERICANA TAP AND
GRILL, d/b/a LANDMARK
LIQUORS, d/b/a THE SPOT,

    Defendant-Appellant.

Argued January 21, 2014 – Decided May 21, 2014

On certification to the Superior Court, Appellate Division.

Sean X. Kelly argued the cause for appellant (Marks, O'Neill, O'Brien, Doherty & Kelly, attorneys; Mr. Kelly and Melissa J. Kanbayashi, on the briefs).

Wesley G. Hanna argued the cause for respondent (Law Office of Sander D. Friedman, attorney).

Jonathan Romberg argued the cause for amicus curiae Seton Hall University School of Law Center for Social Justice.

JUSTICE LaVECCHIA delivered the opinion of the Court.

This appeal involves the private right of action authorized under the New Jersey Civil Rights Act (Act or CRA), N.J.S.A.

10:6-1 to -2. Specifically, we are called on to determine whether the Legislature intended that the Act permit a private right of action to be brought against a person who is not acting under "color of law." N.J.S.A. 10:6-2(c). For the reasons that follow, we hold that, although the Act bestows such authority on the Attorney General, a private CRA cause of action only may be pursued against persons acting under color of law.

I.

A.

The backdrop to the question of law before us involves a contested liquor license renewal proceeding.

Zagami, LLC (Zagami) is the owner of the Landmark Americana Tap and Grill (Landmark), a restaurant and bar in the Borough of Glassboro (Borough). In 2006, Zagami applied to the Borough for a renewal of its liquor license. Luis Perez, a citizen residing in Glassboro, opposed the renewal.[1] In a letter to the Glassboro Borough Council (Council), Perez complained of several serious infractions allegedly committed by Zagami, including serving alcohol to minors and bribing public officials with free meals and drinks. As a result of those allegations, the Council scheduled a liquor license renewal hearing for June 27, 2006, and invited Perez and Zagami to participate. At the hearing,

---

[1] Perez was joined in his opposition to Zagami's license renewal by Maryann Cottrell, a fellow resident whose appeal is a companion to this one.

Perez testified that, among other things, Landmark flouted fire-safety regulations, served alcohol to visibly intoxicated patrons, and encouraged bouncers to physically harm rowdy customers.  Zagami disputed the allegations, calling them unsubstantiated.  At the conclusion of the hearing, the Council voted to renew Zagami's liquor license, Perez's testimony notwithstanding.

A year later, Zagami filed a defamation complaint against Perez for statements that he made during the liquor license renewal hearing.  Perez filed a motion to dismiss the complaint, arguing that his remarks were made in the course of a quasi-judicial proceeding and thus were entitled to absolute immunity. The trial court denied the motion to dismiss and the Appellate Division denied leave to appeal.  We granted Perez's motion for leave to appeal to this Court and summarily remanded the matter to the Appellate Division for consideration on the merits.  On remand, the Appellate Division found that Perez's statements during the liquor license proceeding were entitled to absolute immunity and dismissed the defamation complaint with prejudice. See Zagami, LLC v. Cottrell, 403 N.J. Super. 98 (App. Div. 2008), certif. denied, 198 N.J. 309 (2009).

B.

The proceeding that led to the instant appeal commenced on July 26, 2010, when Perez filed a complaint against Zagami for malicious use of process.

Essentially, Perez alleged that Zagami had instituted its defamation complaint as a Strategic Lawsuit Against Public Participation (SLAPP), or SLAPP suit, designed to punish Perez for speaking out against Zagami at the liquor license renewal hearing and to discourage his participation in future public proceedings. Zagami filed a motion to dismiss the complaint, and Perez filed a cross-motion to amend his complaint to include a claim under the CRA and to add as a defendant the law firm retained by Zagami during the defamation suit. Finding that Zagami's defamation suit was supported by probable cause, the trial court granted Zagami's motion to dismiss the malicious use of process claim and denied Perez's cross-motion to amend the complaint. In respect of the CRA claim, the trial court concluded that N.J.S.A. 10:6-2(c) was modeled after 42 U.S.C.A. § 1983 (Section 1983) and that, consequently, the CRA only authorized private suits against persons acting under color of law.

On appeal, the Appellate Division reversed both determinations of the trial court. The panel determined that Zagami's defamation suit was not supported by probable cause and

4

that Zagami should have been aware that Perez's statements were privileged at the time it filed suit.  Accordingly, the panel reversed the trial court's grant of Zagami's motion to dismiss the malicious use of process claim.

Importantly, for purposes of the instant appeal, the panel disagreed with the trial court's construction of the CRA. Relying on Felicioni v. Administrative Office of the Courts, 404 N.J. Super. 382 (App. Div. 2008), certif. denied, 203 N.J. 440 (2010), the appellate panel determined that N.J.S.A. 10:6-2(c) has two distinct clauses:  one clause protects against a "deprivation" of an individual's constitutional or statutory rights and the other clause protects against an "interference" with those same rights.  Because the "under color of law" language appears only in the second clause of N.J.S.A. 10:6-2(c), which proscribes an interference with protected civil liberties, the panel reasoned that the state action requirement was limited to interference claims.  As a result, the panel allowed Perez to amend his complaint to include a cause of action against Zagami for a deprivation of his civil rights under the CRA.

We granted certification to review only whether the New Jersey Civil Rights Act permits a private right of action against an individual who is not acting under color of law.  213

N.J. 530 (2013).[2]  We also granted amicus curiae status to the Seton Hall University School of Law Center for Social Justice.

II.

A.

The New Jersey Civil Rights Act, in relevant part, contains two subsections authorizing causes of action that may be brought by the Attorney General:

> (a) If a person, whether or not acting under color of law, subjects or causes to be subjected any other person to the deprivation of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, the Attorney General may bring a civil action for damages and for injunctive or other appropriate relief.  The civil action shall be brought in the name of the State and may be brought on behalf of the injured party. . . .

> (b) If a person, whether or not acting under color of law, interferes or attempts to interfere by threats, intimidation or coercion with the exercise or enjoyment by any other person of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, the Attorney General may bring a civil action for damages and for injunctive or other appropriate relief.  The civil action shall be brought in the name of

---

[2] We later granted certification in Cottrell v. Zagami, Inc., also decided today, on the same issue.  215 N.J. 483 (2013).

6

the State and may be brought on behalf of the injured party.

[N.J.S.A. 10:6-2.]

Importantly, the Act also authorizes a private right of action. In that respect, the Act provides in pertinent part:

> (c) Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

The parties dispute the requirements for initiating an action under subsection (c) against a private party for civil rights violations. Specifically at issue is whether all claims filed under N.J.S.A. 10:6-2(c) require the presence of state action, or whether the "under color of law" condition of that subsection is limited to claims based on interference with protected civil rights.

7

B.

Zagami urges this Court to reverse the Appellate Division's decision and to apply subsection (c)'s state action requirement to all private actions under the CRA. In support of its argument, Zagami points to the general structure of the CRA. Zagami asserts that, unlike subsections (a) and (b), which expressly permit the Attorney General to bring suit for civil rights violations against an individual "whether or not acting under color of law," subsection (c) delimits potential defendants to alleged civil rights violators who act "under color of law." According to Zagami, if the Legislature had intended to allow private actions against individuals not acting under color of law, subsection (c) would have included the same unmistakable language as subsections (a) and (b). Moreover, Zagami notes that construing the "under color of law" portion of subsection (c) to apply only to interferences with protected rights would leave the deprivation clause of subsection (c) as the only portion of the statute not identifying permissible defendants.

Perez, in contrast, argues that the Appellate Division's determination should be upheld as consonant with Owens v. Feigin, 194 N.J. 607, 611 (2008). In Owens, we held that the Tort Claims Act's notice-of-claim requirement was inapplicable to actions under N.J.S.A. 10:6-2(c) given the "broad remedial

8

purpose of the CRA" and the absence of any text or legislative history to support imposition of that requirement. Ibid. Perez maintains that adopting the Appellate Division's construction of the CRA aligns with Owens's references to the broad remedial purpose underlying the CRA. Perez further argues that the Legislature intended for the CRA to establish a more robust scheme for protecting civil liberties than its federal counterpart, Section 1983. To that end, Perez contends that the CRA should be construed to permit private actions against both public and private individuals for deprivations of protected rights. Finally, Perez points to the structure of the CRA for support. He argues that, because subsections (a) and (b) clearly distinguish between deprivations and interferences, the Legislature must have intended different treatment for deprivation and interference claims brought under subsection (c).

The Seton Hall University School of Law Center for Social Justice (amicus), appearing as amicus curiae on behalf of Perez, argues that the grammatical construction of subsection (c) supports the Appellate Division's conclusion. Amicus maintains that the presence of a comma preceding the words "or whose exercise" and the absence of a comma preceding the phrase "by a person acting under color of law" evinces a legislative intent to divide N.J.S.A. 10:6-2(c) into two distinct clauses. Because

the "under color of law" language of subsection (c) appears in the interference clause, rather than in the deprivation clause, amicus submits that only actions alleging interference, or an attempted interference, with protected rights require proof of state action.

III.

The issue before this Court is purely one of statutory construction.  Consequently, we review de novo the Appellate Division's interpretation of the CRA.  See Toll Bros. v. Twp. of Windsor, 173 N.J. 502, 549 (2002) (noting that matters of law are subject to de novo review); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

A.

This Court has not yet addressed the meaning of N.J.S.A. 10:6-2(c).  However, our interpretation of that provision is guided by traditional principles of statutory construction. "'When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent.'"  State v. Buckley, 216 N.J. 249, 263 (2013) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)).  There is no more persuasive evidence of legislative intent than the words by which the Legislature

10

undertook to express its purpose; therefore, we first look to the plain language of the statute. See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009).

It bears repeating that N.J.S.A. 10:6-2(c) provides as follows:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

By its terms, it is unclear whether the "person acting under color of law" provision of N.J.S.A. 10:6-2(c) applies to all private actions, or solely to interference claims. Indeed, the Appellate Division has wrestled with the very question that has arisen in this matter. Compare Felicioni, supra, 404 N.J. Super. at 400 (finding that structure of subsection (c) evinces legislative intent to distinguish between deprivation and interference claims), with Filgueiras v. Newark Pub. Schs., 426 N.J. Super. 449, 468 (App. Div.) (requiring state action for all claims under N.J.S.A. 10:6-2(c)), certif. denied, 212 N.J. 460 (2012), and Rezem Family Assocs. L.P. v. Borough of Millstone,

11

423 N.J. Super. 103, 115 (App. Div.) (noting that claims under N.J.S.A. 10:6-2(c) require same elements as claims under Section 1983), certif. denied, 208 N.J. 368 (2011).

In large part, the punctuation of the clause confounds its clear meaning. As amicus points out, normally the presence of a comma preceding the words "or whose exercise" and the absence of a comma preceding the phrase "by a person acting under color of law" would evince a legislative intent to divide N.J.S.A. 10:6-2(c) into two distinct clauses. Yet, that would pin heavy interpretive import on the absence of the second comma. Punctuation, though important, is not necessarily controlling in the search for legislative intent. See Carisel v. King, 2 N.J. 45, 50 (1949) ("Although not to be entirely ignored, punctuation cannot be allowed to control the meaning of the words chosen to voice the intention.").

Making the absence of a second comma preceding the phrase "by a person acting under color of law" in subsection (c) the determiner of the subsection's meaning brings about illogical results. It requires one to accept that the Legislature abandoned the careful and precise structure used in subsections (a) and (b) when explaining whether a private person may be sued under subsection (c). If the Legislature intended for private claims based on the deprivation of civil rights under subsection (c) to be actionable against private citizens, whether or not

12

acting under color of law, it could have clearly expressed that intention as it did in subsection (a), or as it did for interference claims filed under subsection (b). We do not believe that the mere omission of a second comma in the complicated wording of subsection (c) signals that the phrase "acting under color of law" applies only to a defendant charged with interfering or attempting to interfere with civil rights. Indeed, an interpretation of subsection (c) based solely on punctuation requires acceptance of a reading that is utterly at odds with the clarity of expression used by the Legislature in subsections (a) and (b).

When construing a statute, "the intention of the Legislature is to be derived from a view of the entire statute" and all provisions "must be read together in light of the general intent of the act." Hubner v. Spring Valley Equestrian Ctr., 203 N.J. 184, 195 (2010). We presume that the Legislature created subsections (a), (b), and (c) as a cohesive whole. That presumption cautions against an asserted plain language reading of subsection (c) that appears at odds with related phraseology in its sister subsections. Moreover, Perez and amicus's asserted interpretation creates ambiguity within subsection (c) in that our acceptance of the import of a mere missing comma would render the opening clause of (c) -- involving a private

13

party's deprivation claim -- as the only one in N.J.S.A. 10:6-2 not to have an identified actor who committed the violation.

In sum, subsection (c) poses a challenging interpretative task.  From a plain language reading, it is difficult to discern legislative intent with any certainty.  We can only conclude that the argument based on the punctuation of subsection (c) provides an infirm foundation on which to rest a holding as to whether the Legislature intended to require both deprivation and interference claims to be brought only against individuals acting under color of law.

### B.

Because the language of N.J.S.A. 10:6-2(c) "does not lead to a single, clear meaning," we seek assistance from the relevant legislative history.  State v. O'Driscoll, 215 N.J. 461, 474 (2013); see also N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 20 (2013) ("If [statutory] language is ambiguous, courts can examine extrinsic evidence, including legislative history, for guidance.").

The CRA was enacted in 2004 for the profound purpose of "provid[ing] the citizens of New Jersey with a State remedy for deprivation of or interference with the civil rights of an individual."  S. Judiciary Comm. Statement to S. No. 1158, 211th Leg. 1 (May 6, 2004).  According to Governor McGreevey, who signed the bill into law, the CRA was designed as a "State

14

analog to the federal civil rights statute codified at 42 U.S.C.A. [§] 1983" and was not intended to "create any new substantive rights." Governor's Statement on Signing Assembly Bill No. 2073 (Sept. 10, 2004). Instead, it is apparent that the CRA was intended to address potential gaps in remedies available under New Jersey law but not cognizable under the federal civil rights law, Section 1983.

Subsections (a) and (b) of the CRA authorize the Attorney General to bring suit on behalf of an individual who has suffered a deprivation of or interference with certain substantive civil rights, while subsection (c) of the CRA provides a private cause of action for an individual subjected to a deprivation of or interference with those protected rights. N.J.S.A. 10:6-2. The relevant legislative history, as well as the plain text of the statute, establish that the Attorney General may bring suit against an individual "whether or not [the defendant is] acting under color of law." N.J.S.A. 10:6-2(a), (b); see Assemb. Judiciary Comm. Statement to Assemb. No. 2073, 211th Leg. 1 (Feb. 19, 2004). However, in describing the scope of subsection (c), the Senate sponsor and corresponding Assembly sponsor explained that "any individual may bring a [private] civil action if his rights, privileges or immunities have been deprived, interfered with or attempted to be interfered with by threats, intimidation or coercion by a

15

person acting under color of law." S. 1558 (Sponsor's Statement), 211th Leg. (May 6, 2004); Assemb. 2073 (Sponsor's Statement), 211th Leg. (Feb. 9, 2004). In other words, both the Senate and General Assembly bill sponsors evidently regarded state action as an essential component of interference and deprivation claims under subsection (c). That view is not contravened elsewhere in the legislative history. Moreover, that construction comports with the CRA's purpose as a state law analogue to Section 1983.[3]

---

[3] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

16

In sum, legislative history supports the conclusion that, notwithstanding the lack of a comma preceding the phrase "by a person acting under color of law" in subsection (c), the phrase was understood by lawmakers responsible for its drafting and passage through both Houses of the Legislature to refer to persons subject to suit for both a deprivation as well as an interference claim by a private party under the Act. In other words, "acting under color of law" modifies the one and only reference to persons who may be sued under subsection (c), regardless of whether it is a deprivation claim or an interference claim.

IV.

Thus, a plain language reading of subsection (c) does not clearly indicate to which claims the phrase "person acting under color of law" should apply.

Moreover, the phrase's location raises questions about its intended effect. The interpretation urged by Perez and amicus would result in the deprivation action by a private party becoming the only cause of action in the statute for which the Legislature has not identified a permissible defendant. It thus would render a portion of subsection (c)'s claims incomprehensible. Interpretations that lead to absurd or futile results are to be avoided. See Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999) ("[I]t is axiomatic that a statute will not

17

be construed to lead to absurd results."). If the complicated wording of subsection (c) is read as Perez and amicus argue, one is left wondering why the Legislature would by implication throw open to private parties deprivation claims against non-state actors. The Legislature knew how to express itself clearly and unmistakably in subsections (a) and (b) when setting forth claims that could be brought against a private person who does not act under color of law. Rules designed to aid courts grappling with doubtful meaning of language urge that provisions within a statute are to be read in a cohesive way. See, e.g., Beim v. Hulfish, 216 N.J. 484, 498 (2014) (recognizing that provisions within overall statutory scheme should be read together and provide relative context in light of act's general intent); Hubner, supra, 203 N.J. at 195.

Further, we are not persuaded that the absence of a comma in such a complicated statutory sentence is dispositive on the question of legislative intent. We note, again, that punctuation, though important, is not decisive of legislative intent. See Carisel, supra, 2 N.J. at 50 (noting that punctuation does not trump legislative intent to be gleaned from "the words chosen to voice th[at] intention"); see also 2A Sutherland, Statutory Construction, § 47.15 at 345 (7th ed. 2007) ("If the act as originally punctuated does not reflect the true legislative intent, the punctuation may be disregarded,

18

transposed, or the act may be repunctuated in order to effectuate such intent."). In this instance, the lack of a comma preceding the phrase "person acting under color of law" seems more an oversight than an intentional effort to substantively differentiate between deprivation claims and interference claims.

We seek an interpretation that gives meaning to the legislative phrasing of subsection (c) in respect of deprivation claims by private parties. By interpreting the phrase "persons acting under color of law" to define persons against whom both deprivation and interference (or attempted interference) claims may be brought, we give meaning and application to the entire wording of this first sentence of section (c).

That construction serves an additional and important purpose. The legislative history is replete with references that the CRA was intended to provide New Jersey citizens with a state analogue to Section 1983 actions, and our construction is in keeping with that purpose. Section 1983 actions may only be brought against persons who are acting "under color of" law. See Mitchum v. Foster, 407 U.S. 225, 240, 92 S. Ct. 2151, 2161, 32 L. Ed. 2d 705, 716 (1972) (observing that Section 1983 "was intended to enforce the provisions of the Fourteenth Amendment against state action, . . . whether that action be executive, legislative, or judicial") (internal quotation marks omitted);

19

see also <u>The Civil Rights Cases</u>, 109 <u>U.S.</u> 3, 10, 3 <u>S. Ct.</u> 18, 20-21, 27 <u>L. Ed.</u> 835, 839 (1883) (explaining that "under color of law" "is state action of a particular character" and that Section 1983 only authorizes "redress against . . . the action of state officers, executive or judicial, when these are subversive of . . . fundamental rights"); <u>Wildoner v. Borough of Ramsey</u>, 162 <u>N.J.</u> 375, 385 (2000) (noting similarly that "[t]o establish a valid claim [under Section 1983], plaintiff[s] must prove that defendants [1] acted under color of law and [2] deprived [them] of a well-established federal constitutional or statutory right"). Our interpretation of the private action authorized under <u>N.J.S.A.</u> 10:6-2(c) advances that legislative intent to make the private cause of action correlate to the federal cause of action authorized by Section 1983.

Indeed, the adoption of Perez's preferred construction would dramatically expand the liability of private individuals beyond its current bounds and authorize actions against a private person for perceived constitutional violations. We do not believe that the Legislature intended to work such a radical change through the ambiguous placement of a comma. <u>Cf.</u> <u>Whitman v. Am. Trucking Ass'ns</u>, 531 <u>U.S.</u> 457, 468, 121 <u>S. Ct.</u> 903, 909-10, 149 <u>L. Ed.</u> 2d 1, 13 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might

20

say, hide elephants in mouseholes."). Had the Legislature intended to permit private actions for deprivations of protected rights irrespective of state action, we think it would have done so expressly.[4]

On the other hand, to the extent that the CRA authorizes the Attorney General to bring CRA actions against persons, whether or not acting under color of law, the legislative choice to provide a robust remedy for substantive civil rights violations is unimpeded. Our construction is consistent with prior statements by this Court recognizing that the Act creates a broad remedial scheme and provides strong remedies to combat civil rights violations. See Owens, supra, 194 N.J. at 611 (recognizing CRA's "broad remedial purpose").

In conclusion, we hold that the phrase "person acting under color of law" in N.J.S.A. 10:6-2(c) applies to deprivation as well as to interference, or attempt-to-interfere, claims brought by private party plaintiffs under the Act.

V.

The judgment of the Appellate Division is reversed in part.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

---

[4] Notwithstanding our conclusion that the CRA does not provide a private action based on a deprivation of civil rights irrespective of state action, we note that Perez is not without a remedy because his malicious use of process claims remain viable under the Appellate Division's judgment.

21

# SUPREME COURT OF NEW JERSEY

NO. ___A-36___  SEPTEMBER TERM 2012

ON CERTIFICATION TO ___Appellate Division, Superior Court___

LUIS PEREZ,

       Plaintiff-Respondent,

          v.

ZAGAMI, LLC, d/b/a THE
LANDMARK AMERICANA TAP AND
GRILL, d/b/a LANDMARK
LIQUORS, d/b/a THE SPOT,

       Defendant-Appellant.

DECIDED ___May 21, 2014___

___Chief Justice Rabner___ PRESIDING

OPINION BY ___Justice LaVecchia___

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM IN PART | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |