**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1938-22

NC COMMUNITY CENTER
ASSOCIATES,

     Plaintiff-Respondent,

v.

BMAAWAD ENTERPRISES,
LLC, BASSAM MAAWAD,
and LYNDA SHALLAN,

     Defendants-Appellants.

_____

Submitted March 18, 2024 – Decided July 19, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2825-21.

Guarino & Co. Law Firm, LLC, attorneys for appellants (Philip L. Guarino, on the briefs).

Weiner Law Group, LLP, attorneys for respondents (Lawrence M. Berkeley, of counsel and on the brief; Jason Mastrangelo, on the brief).

PER CURIAM

Defendants Bmaawad Enterprises, LLC (BE, LLC), Bassam Maawad, and Lynda Shallan appeal from three orders of the Law Division: (1) an October 21, 2022 order dismissing defendants' affirmative defenses with prejudice and finding BE, LLC in breach of a commercial lease; (2) an October 21, 2022 order denying Shallan's cross-motion for summary judgment on claims arising from her role as guarantor of the lease; and (3) a February 7, 2023 order confirming an arbitration award against Maawad and Shallan.  We affirm.

I.

Maawad is the sole member, officer, and director of BE, LLC.  He formed the entity to be the franchisee and operator of a fitness club.  Maawad and Shallan are married.

On July 10, 2019, BE, LLC leased commercial premises owned by plaintiff NC Community Center Associates in a shopping center in Jersey City for a period of ten years.  Plaintiff required personal guarantees of Maawad and Shallan as a condition of issuing the lease to BE, LLC.

After several months of construction to fit the space for operation of a fitness club, in March 2020, BE, LLC was prepared to initiate its business operations.  On March 9, 2020, the arrival of the COVID-19 pandemic resulted in the imposition of government restrictions on the operation of fitness clubs.

2

These restrictions severely hindered the opening and operation of BE, LLC's business at the premises.

Beginning in April 2020, BE, LLC began failing to pay rent. On January 21, 2021, plaintiff served a demand for payment on defendants, requiring they cure BE, LLC's default within seven days by paying $702,117.43, which included unpaid rent, future rent, and other obligations under the lease. Defendants did not cure the default.

On July 15, 2021, plaintiff filed a complaint in the Law Division against defendants. Plaintiff alleged BE, LLC was in default on the lease and liable for rental arrears, future rents, an unamortized tenant allowance, and other amounts. Plaintiff also alleged that Maawad and Shallan, as personal guarantors of the lease, were liable for all damages sought against BE, LLC. Plaintiff sought $718,971.51, plus attorney's fees.

Defendants filed an answer raising several defenses: (1) the COVID-19 pandemic frustrated the purpose of the lease by causing the shutdown of BE, LLC's business, barring plaintiff's claims; (2) the COVID-19 pandemic was a changed circumstance barring plaintiff's claims; (3) plaintiff breached the covenant of good faith and fair dealing by demanding rent when it knew the COVID-19 pandemic caused the shutdown of BE, LLC's business; (4) plaintiff

A-1938-22

had unclean hands; (5) Shallan's guarantee could not be enforced because plaintiff violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, by requiring Shallan to sign the guarantee; and (6) plaintiff's claims were barred by waiver and estoppel.

Plaintiff moved for summary judgment on its claims and for dismissal of defendants' affirmative defenses. Defendants cross-moved for summary judgment.

On October 21, 2022, the trial court issued an oral opinion granting plaintiff's motion in part and denying defendant's cross-motion. The court found that: (1) BE, LLC breached the lease; (2) the COVID-19 pandemic did not constitute a frustration of the purpose of the lease or a changed circumstance relieving BE, LLC of its obligations under the lease or Maawad and Shallan of their obligations as guarantors, warranting dismissal of defendants' affirmative defenses relating to the pandemic; (3) plaintiff did not violate the ECOA when it required Shallan to guarantee the lease, warranting dismissal of defendants' affirmative defense based on the ECOA; and (4) defendants' remaining affirmative defenses are meritless. Two October 21, 2022 orders memorialize the trial court's decisions.

A-1938-22

The parties subsequently submitted their claims to non-binding arbitration with a court-appointed arbitrator. The arbitrator issued an arbitration award in favor of plaintiff for $232,781. The award identifies the "responsible party" as "Bmaawad Enterprises." Maawad and Shallan are not identified as responsible parties on the arbitration award. Attached to the arbitration award is a single page explaining the award, in relevant part, as follows:

> Award damages to [p]laintiff up to end of 2023 in accordance with the terms of the lease. This will satisfy any requirements of mitigating damages. With the way the current economy is going it is difficult to arrive at a decision regarding mitigation of damages.
>
> The lease begins 2/4/2020 and expiration is 2/28/2030.
>
> Future rents are $737,215.82.
>
> From calculations provided by the [p]laintiff, it appears that two years would be $275,301.86.
>
> There does not appear to be any issue with personal guarantees.

The explanation continues with calculations to arrive at $232,781 as the amount awarded. Defendants did not seek a trial de novo. See R. 4:21A-6(b)(1).

Plaintiff thereafter moved to confirm the arbitration award jointly against BE, LLC, Maawad, and Shallan. Defendants opposed the motion, arguing the arbitration award was entered against only BE, LLC. They argued that entry of

5

a judgment against any party other than BE, LLC would be improper. Defendants argued they did not request a trial de novo precisely because the arbitrator found only BE, LLC liable for breach of the lease. They allege that had the arbitration award been entered against the other defendants they would have demanded a trial de novo.

In reply to defendants' opposition, counsel for plaintiff submitted a certification in which he stated that he participated in the arbitration and that "the arbitrator made it abundantly clear, and [d]efendants' counsel clearly understood, that the arbitrator found liability on the part of all [d]efendants." Plaintiff also relied on the arbitrator's statement that "[t]here does not seem to be any issue with personal guarantees" in the page attached to the arbitration award as evidence that the validity of the guarantees was not raised as an issue before the arbitrator. Finally, plaintiff noted that the arbitration award does not affirmatively state that Maawad and Shallan are not liable as guarantors for BE, LLC's breach of the lease.

Attached to the attorney's certification was an email from the arbitrator dated January 26, 2023 in which he stated:

> Dear [counsel]: As to your question, I attached an addendum to my award and indicated in my award to see the attached. I also indicated that there does not seem to be any issue with the personal guarantees. That

A-1938-22

meant that they are just as responsible as the tenant. I thought everyone understood this.

On February 3, 2023, the trial court entered an order confirming the arbitration award, which, with interest, totaled $240,199.95 against all defendants. The court found "[i]t is clear from the supplemental letter from the Arbitrator that the Arbitration Award was meant to apply to all defendants."[1]

On March 10, 2023, the trial court entered an order denying defendants' motion for reconsideration.

This appeal followed. Defendants argue the trial court: (1) erroneously concluded that plaintiff did not violate the ECOA when it demanded Shallan's guarantee as a condition of issuing the lease to BE, LLC; (2) erred when it struck certain of defendants' affirmative defenses, in part because plaintiff had agreed to abate rent; and (3) erroneously confirmed the arbitration award against Maawad and Shallan.

II.

We address defendants' argument in turn. We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v.

---

[1] Although the court referred to a letter in its order, it later confirmed during oral argument on defendants' motion for reconsideration that it relied on the January 26, 2023 email referenced above.

Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    ECOA.

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . ." 15 U.S.C. § 1691. Under 12 C.F.R. § 202.7(d)(1), "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of

creditworthiness for the amount and terms of the credit requested." Defendants argue that plaintiff violated this regulation when it required Shallan to sign a guarantee in order for BE, LLC to obtain the lease merely because she was Maawad's spouse, even though Maawad was qualified to serve as guarantor of the lease. There are several flaws in this argument.

First, ECOA does not apply to a lease of real property. "Credit" is defined under the ECOA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). It is clear that with respect to real property transactions, the statute is limited to the purchase of real property and not to leasing real property. As the United States Court of Appeals for the Seventh Circuit convincingly explained, a lease of real property is considered

> a contemporaneous exchange of consideration – the tenant pays rent to the landlord on the first of each month for the right to continue to occupy the premises for the coming month. A tenant's responsibility to pay the total amount of rent due does not arise at the moment the lease is signed; instead a tenant has the responsibility to pay rent over roughly equal periods of the term of the lease. The rent paid each period is credited toward occupancy of the property for that period . . . . As such, there is no deferral of a debt, the requirement for a transaction to be a credit transaction under the Act.

A-1938-22

[Laramore v. Ritchie Realty Mgmt. Co., 397 F.3d 544, 547 (7th Cir. 2005).]

Second, even if the lease of real property is a credit transaction under the ECOA, in this instance the applicant for that credit was BE, LLC, not Maawad. The lease is between plaintiff and BE, LLC only. Thus, in order for BE, LLC to establish that plaintiff violated the ECOA by requiring Shallan to sign a guarantee, BE, LLC would have to establish that it independently "qualifie[d] under the creditor's standards of creditworthiness for the amount and terms of the" lease. 12 C.F.R. § 202.7(d)(1). BE, LLC was formed solely for the purpose of operating a business, which at the time the lease was signed, had not begun providing services. It had no financial history on which to rely to obtain the lease. BE, LLC made no showing before the trial court that it met plaintiff's standards for creditworthiness for a ten-year lease without the need for Shallan's guarantee.

Maawad argues that he alone was a sufficient guarantor of BE, LLC's lease, thus obviating the need for Shallan to also serve as a guarantor. Even if true, plaintiff's requirement that Shallan also sign the guarantee would not violate the ECOA. BE, LLC was the applicant for the lease, not Maawad. Because BE, LLC cannot establish that it met plaintiff's standards for creditworthiness for the lease, the regulation does not apply. Defendants point

10

to no statute or regulation that limits the number of guarantors a landlord may require as a condition for issuance of a lease to a tenant who does not meet the landlord's standards for creditworthiness.

B.   Frustration of Purpose.

Supervening events that make performance of a contract impractical may excuse performance. See M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 389-90 (2002). "A successful defense of impossibility (or impracticability) of performance excuses . . . contract obligations, where performance has become literally impossible, or at least inordinately more difficult, because of the occurrence of a supervening event that was not within the original contemplation of the contracting parties." JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc., 431 N.J. Super. 233, 246 (App. Div. 2013). "The supervening event must be one that had not been anticipated at the time the contract was created, and one that fundamentally alters the nature of the parties' ongoing relationship." Id. at 245.

Similarly, "under the . . . doctrine of frustration of purpose, . . . the supervening event fundamentally has changed the nature of the parties' overall bargain." Id. at 246. Frustration of purpose "arises when a change in circumstances makes one party's performance worthless to the other, frustrating

11

[that party's] purpose in making the contract." Id. at 246-47 (quoting Restatement (Second) of Contracts, § 265 cmt. a). "The frustration must be so severe that it is not fairly to be regarded as the risks that [the party invoking the doctrine] assumed under the contract." Id. at 247 (alteration in original) (quoting Restatement (Second) of Contracts, § 265 cmt. a). As we held,

> [t]o sustain a defense under the doctrine of frustration it does not appear to be sufficient to disclose that the "purpose" or "desired object" of but one of the contracting parties has been frustrated. It is their common object that has to be frustrated, not merely the individual advantage which one party or the other might have achieved from the contract.
>
> [Edwards v. Leopoldi, 20 N.J. Super. 43, 55 (App. Div. 1952) (internal citations omitted).]

It is undisputed that beginning in early March 2020, the Governor issued executive orders that imposed restrictions on the operations of retail establishments, including fitness centers. On June 26, 2020, however, the Governor signed Executive Order 157, which allowed fitness centers to reopen outdoor areas and to allow individualized indoor instruction by appointment. N.J. Exec. Order 157 (June 26, 2020). According to the Executive Order, individualized instruction included "an individual, and the individual's immediate family members, household members, caretakers, or romantic partners." Ibid. The Executive Order allowed for multiple simultaneous

instructions at the same facility if such instruction took place in "separate rooms or, if they [took] place in the same room . . . separated by a floor-to-ceiling barrier." Ibid. On August 27, 2020, the Governor signed Executive Order 181, which allowed fitness centers to reopen their indoor premises at a limited capacity. N.J. Exec. Order 181 (Aug. 27, 2020). At no point did the State prevent fitness centers from offering fitness-related coaching or classes remotely.

Government restrictions on BE, LLC's operation of its business, although initially severe, ultimately were of limited duration and scope. We agree with plaintiff's argument that COVID-19-related restrictions did not amount to a frustration of the purpose of the ten-year lease. While restrictions halted BE, LLC's in-person business operations for a short period beginning in March 2020, the entity made no subsequent attempt to provide limited services once restrictions were eased, to provide virtual services, or to use the space it rented for other income-generating purposes.

When BE, LLC signed the lease, it assumed the obligation to pay rent for the premises in the event its business operations were not profitable or ultimately failed. That risk included the possibility that its fitness-oriented business would face significant obstacles from government regulations relating to a sudden and

widespread public health emergency. The three-month total prohibition on in-person services by a fitness center, followed by an easing and later removal of those restrictions, does not constitute a fundamental change to the nature of the parties' overall bargain as reflected in their ten-year lease.

We have carefully reviewed the record and find no evidence supporting BE, LLC's claim that plaintiff agreed to abate its rent. Defendants rely only on Maawad's unsupported and self-serving recollection that such an agreement was reached. Maawad could not recall the name of the person who agreed to abate BE, LLC's rent and produced no documents corroborating his claim. Defendants did not raise a genuine issue of material fact by alleging that the sophisticated owner of a shopping center made a significant amendment to a written commercial lease through an oral representation by an unnamed person who did not thereafter confirm the amendment in writing.

C.    Arbitration Award.

"[T]he scope of review of an arbitration award is narrow." Fawzy v. Fawzy, 199 N.J. 456, 470 (2009). "It is well-settled that New Jersey's strong public policy favors settlement of disputes through arbitration." Minkowitz v. Israeli, 433 N.J. Super. 111, 131 (App. Div. 2013). Accordingly, "'courts grant

14

arbitration awards considerable deference.'" Id. at 135 (quoting Borough of East Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013)).

Defendants do not challenge the validity of the arbitration award. They argue only that the trial court erred by confirming the award against Maawad and Shallan. Defendants' argument is without merit. While the arbitration award lists only BE, LLC as the responsible party, it is evident that the parties and the arbitrator were aware that Maawad and Shallan were the guarantors of BE, LLC's obligations under the lease. Defendants produced no evidence suggesting that Maawad and Shallan argued before the arbitrator that the guarantees are not enforceable. To the contrary, the explanation that the arbitrator attached to the award states that there appears to be no issue with the guarantees. Nothing in the record suggests that the arbitrator, who reduced plaintiff's claims from more than $700,000 to approximately $250,000, also released the obligations of the two parties who guaranteed the lease.

We are not persuaded by defendants' contention that they would have requested a trial de novo had their names appeared on the face of the arbitration award. Other than their ECOA argument, which was rejected by the trial court prior to entry of the arbitration award, defendants did not identify before the trial court or the arbitrator a basis on which they claim the guarantees should be

15

invalidated. It is unlikely that defendants, having secured a significant reduction in the amount of the judgment, would have demanded a trial de novo in the absence of any convincing argument that the guarantees are invalid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1938-22