**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1747-22

ROBERT MULLIGAN,

     Plaintiff-Appellant,

v.

COUNTY OF CAMDEN,

     Defendant-Respondent.

_____

Submitted February 26, 2024 – Decided February 11, 2025

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3855-21.

Mets Schiro & McGovern, LLP, attorneys for appellant (Nicholas P. Milewski, of counsel and on the briefs).

Emeshe Arzón, Camden County Counsel, attorney for respondent (Howard L. Goldberg, First Assistant County Counsel, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff Robert Mulligan appeals from two February 3, 2023 orders of the Law Division: (1) denying his motion for summary judgment; (2) granting defendant County of Camden's cross-motion for summary judgment; and (3) dismissing his complaint with prejudice. We affirm.

I.

Mulligan was employed as a police officer in the patrol unit of the Camden County Metro Police Department (CCPD) from the inception of the department in April 2013 to June 2017. Since shortly after the creation of the CCPD, police officers have been represented by the Fraternal Order of Police, Lodge No. 218. The initial collective bargaining agreement (CBA) for CCPD officers was effective from January 1, 2014 to December 31, 2016.

According to the CBA, at the time Mulligan was hired, patrol officers received a base salary of $84,513 per year paid at a rate of $40.63 per hour ($84,513 ÷ 26 pay periods ÷ 80 hours = $40.63). Due to contractual salary increases, at the time of his retirement in June 2017, Mulligan's base salary was $89,686 per year paid at a rate of $43.11 per hour ($89,686 ÷ 26 pay periods ÷ 80 hours = $43.11).

Pursuant to Section V of the CBA, "[t]he regular shifts for patrol officers shall be twelve hours" and "[e]mployees shall receive overtime compensation

for any hours worked in excess of eighty-six . . . hours in any fourteen[-]day work period for employees working [twelve-]hour shifts . . . ."

Mulligan worked what is commonly known as the Pittman schedule: seven twelve-hour shifts per fourteen-day pay period. He therefore worked eighty-four hours every pay period. When he retired, Mulligan was paid at a rate of $43.11 per hour for eighty-four hours each pay period. He was not paid overtime for the four hours per pay period he worked above eighty hours. All patrol officers on the Pittman schedule were compensated in the same manner.

During his employment, Mulligan was enrolled in the Police and Firemen's Retirement System (PFRS). The county deducted Mulligan's twice monthly contribution to PFRS at a rate of ten percent of his base salary as stated in the CBA for an eighty-hour pay period, even though he worked and was paid for eighty-four hours each pay period. As the county's Chief Financial Officer attested, "[a]lthough most police officers earn in excess of [their] base salaries, either through overtime, or by working additional hours as [twelve]-hour employees, the pension deduction is set at [ten] percent of their base and is not increased by the additional compensation they may earn."[1]

_____

[1] Although the county paid officers bi-weekly, resulting in twenty-six pay periods each year, it deducted pension contributions twice a month, resulting in

When Mulligan retired in June 2017, the county reported to the Division of Pensions and Benefits (Division) that his base salary for pension purposes was $89,683.92. As noted above, this is the base salary contained in the CBA for patrol officers and not the amount earned by Mulligan while he was a patrol officer.[2] The county's calculation was consistent with Section XX (2) of the CBA, entitled "Insurance, Health, and Welfare." That provision states "[b]ase salary shall be used to determine what an employee earns for the purposes of this provision and shall mean pensionable salary."

The Division calculated Mulligan's monthly retirement benefit based on the final base salary of $89,683.92 reported by the county. When Mulligan retired a new CBA was being negotiated, so the county reported his final base salary as $89,683.92, the base salary in the CBA that expired December 31, 2016. A new CBA was executed in December 2017, resulting in retroactive increases in base salaries for 2017. Mulligan's retroactive increase was added to his final base salary for pension purposes, resulting in a revised final base

---

twenty-four pension contribution deductions each year. In a bi-weekly pay system, there are two months each year with three pay periods. In those months, the county did not deduct pension contribution in one pay period.

[2] The $2.05 difference between the $89,685.97 base salary listed in the CBA and the $89,683.92 final base salary reported by the county is not explained in the record and appears immaterial.

salary of $91,479.69 per year paid at a rate of $43.98 per hour ($91,479 ÷ 26 pay periods ÷ 80 hours = $43.98). The Division adjusted Mulligan's monthly retirement benefits accordingly.

Mulligan pursued an administrative appeal of the Division's calculation of his final base salary, arguing his final base salary should be the amount he was paid and not the amount listed in the CBA for his position. The Division rejected his appeal, stating it was bound by the county's calculation of his final base salary. According to Mulligan, the Division stated if he succeeded in having the county recalculate his final base salary, it would recalculate his retirement benefits. The county thereafter rejected his request to recalculate his final base salary, reiterating the final base salary it provided to the Division was correct.

In December 2021, Mulligan filed a complaint in the Law Division seeking a declaratory judgment. He alleged the county erroneously calculated the final base salary it reported to the Division based on the eighty-hour, two-week base salary in the CBA. Mulligan alleged the county should have calculated the final base salary based on the eighty-four-hour, two-week pay he regularly received during his employment.

He sought a declaration that his final base salary for pension purposes is $96,052.32, calculated at the hourly rate in the CBA executed in December 2017

for the eighty-four hours he worked each pay period ($43.98 x 84 hours x 26 pay periods = $96,052.32).  Although Mulligan initially sought monetary damages from the county, he withdraw that claim.[3]

After discovery, the parties cross-moved for summary judgment.

On February 3, 2023, the trial court issued an oral decision denying Mulligan's motion for summary judgment, granting the county's cross-motion for summary judgment, and dismissing the complaint.  The court found there were no genuine issues of material fact.  The court concluded the CBA controlled the relationship between the parties and defined Mulligan's base salary for pension purposes.  Accordingly, the court held the CBA unequivocally provides Mulligan's final base salary at the time of his retirement was $89,683.92, even though he earned more than that amount.  In support of its decision, the court relied on Section XX (2) of the CBA, as well its salary provisions.

The court also noted the parties' course of conduct during Mulligan's employment where the county deducted from Mulligan's pay bi-monthly pension contributions calculated as a percentage of his base salary as stated in the CBA

---

[3]  Mulligan acknowledges if he is successful, it will be necessary for him to pay the contributions to PFRS that should have been deducted from his pay during his employment for the extra four hours each pay period.

A-1747-22

and not a percentage of the amount he earned. The court found Mulligan's final base salary increased to $91,479.69 when the second CBA was executed and applied retroactively after his retirement.

Thus, the court concluded, the county accurately reported Mulligan's final base salary to the Division and was entitled to summary judgment in its favor. Two February 3, 2023 orders memorialized the trial court's decision.

This appeal followed. Mulligan argues: (1) the base salary in the CBA does not apply to Mulligan because it is based on eighty-hour pay periods and he worked an eighty-four-hour pay periods; and (2) the trial court's decision conflicts with the statutory definition of base salary for pension purposes.

II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

"A person interested under a . . . written contract . . . whose rights, status or other legal relations are affected by a statute [or] contract . . . may have determined any question of construction . . . arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." N.J.S.A. 2A:16-53. "A declaratory action . . . is proper provided there is a justiciable controversy, the party claiming the relief has standing, and there are no adequate or appropriate alternative remedies." Amato v. Twp. of Ocean Sch. Dist., 480 N.J. Super. 239, 252 (App. Div. 2024) (quoting Lab. Ready Ne., Inc. v. Dir., Div. of Tax'n, 25 N.J. Tax 607, 612 (Tax 2011)).

N.J.S.A. 43:16A-1(26)(a) provides that "[c]ompensation" for purposes of calculating a retirement benefit

> shall mean the base salary, for services as a member as defined in this act, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not

8

include individual salary adjustments which are granted primarily in anticipation of the member's retirement or additional remuneration for performing temporary duties beyond the regular workday.

N.J.A.C. 17:4-4.1(a)(1) mirrors the statute:

> The compensation of a member subject to pension contributions and creditable for retirement and death benefits in the system shall be limited to base salary, and shall not include extra compensation.
>
> 1. "Base salary" means the annual compensation of a member, in accordance with established salary policies of the member's employer for all employees in the same position, or all employees covered by the same collective bargaining agreement, which is paid in regular, periodic installments in accordance with the payroll cycle of the employer.

In addition, N.J.A.C. 17:4-6.9 (a) provides:

> In order to determine the final compensation for benefits on a:
>
> 1. Member reported on a monthly basis, use the base salary upon which pension contributions were made to the Annuity Savings Fund for the member's last [twelve] months of service.

At the time Mulligan retired, the CBA plainly provided the annual compensation of officers in Mulligan's position was $89,685.97. This base salary, in accordance with established salary policies of the county, applied to all employees in the position that Mulligan occupied. The CBA recognized

9

patrol officers work twelve-hour shifts, which translates to an eighty-four-hour pay period. It did not, however, list a separate base salary for patrol officers who work twelve-hour shifts. The agreement instead provided an hourly rate at which patrol officers working twelve-hour shifts would be compensated for the hours beyond the eighty hours incorporated in their base salary. Thus, the CBA contains one base salary for patrol officers whether they work eighty hours a pay period or eighty-four hours a pay period.

The record establishes that during Mulligan's four years as an officer, the county deducted bi-monthly pension contributions from his pay at a rate of ten percent of the base salary listed in the CBA, and not at a rate of ten percent of the amount he earned working eighty-four hours each pay period. There is no evidence in the record Mulligan protested during his employment the rate at which the county deducted pension contributions from his pay.

We agree with the trial court's conclusion the county complied with N.J.S.A. 43:16A-1(26)(a) and Division regulations when it reported Mulligan's final base salary. To the extent we have not specifically addressed any of Mulligan's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                                                    A-1747-22