**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3642-22

JERSEY CITY BOARD OF
EDUCATION and G.D.,
a minor, by his guardian ad
litem, NICOLE GOHDE,

      Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY, NEW
JERSEY DEPARTMENT OF
EDUCATION, DR. ANGELICA
ALLEN-MCMILLAN, in her official
capacity as Acting Commissioner of
Education, NEW JERSEY OFFICE
OF MANAGEMENT AND BUDGET,
NEW JERSEY DEPARTMENT OF
TREASURY, ELIZABETH MAHER
MUOIO, in her official capacity as
New Jersey State Treasurer, NEW
JERSEY SCHOOLS DEVELOPMENT
AUTHORITY, and MANUEL M.
DA SILVA, in his official capacity as
Interim CEO of the Schools
Development Authority,

      Defendants-Respondents.

_____

Argued January 22, 2025 – Decided February 11, 2025

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0914-19.

David G. Sciarra argued the cause for appellants (Genova Burns LLC, attorneys; Angelo J. Genova and Jennifer Borek, of counsel and on the briefs; David G. Sciarra and Celia S. Bosco, on the briefs).

Amna Toor, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Christopher Weber, Deputy Attorney General, and Amna Toor, on the brief).

PER CURIAM

Appellant Jersey City Board of Education (JCBOE) and a parent of a child enrolled in one of JCBOE's public schools challenged respondents' implementation in the Jersey City School District (the District) of the School Funding Reform Act (SFRA), N.J.S.A. 18A:7F-43 to -71. Appellants argued that the 2018 amendments to the SFRA, phasing out certain aid and implementation of the SFRA prior to the amendments, were unconstitutional as applied in Jersey City. Appellants alleged the District was not providing its public-school students a thorough and efficient education (T&E) as required by our State's Constitution. N.J. Const. art. VIII, § 4, ¶ 1 (T&E). Appellants

contend this is due to the failure of the New Jersey Department of Education (DOE) to adequately fund the District. Appellants argue the District was unable to raise sufficient tax revenue to cover the budget necessary to provide T&E education, and the State refused to grant the necessary aid that JCBOE was entitled to pursuant to the SFRA.

Respondents moved and appellants cross-moved for summary judgment. On June 14, 2023, the court granted respondents' motion for summary judgment and denied appellants' cross-motion for summary judgment, finding the District had not raised sufficient funds from local taxes, DOE was not responsible for making up the deficits in the District's budget, and appellants failed to establish that JCBOE was not providing T&E education. We affirm.

I.

In January 2008, the Legislature enacted the SFRA. Enactment of the SFRA followed decades of litigation over school funding. Abbott v. Burke, 199 N.J. 140 (2009) (Abbott XX). The statute is intended to fulfill the State Constitution's mandate that the Legislature provide for the maintenance and support of a thorough and efficient system of free public schools for children between the ages of five and eighteen years. Id. at 144, 147-48; N.J.S.A. 18A:7F-44; see also N.J. Const. art. VIII, § 4, ¶ 1 (T&E). The SFRA created a

"clear, unitary, enforceable statutory formula to govern appropriations for education . . . ."  N.J.S.A. 18A:7F-44(g).

The SFRA established a structure for public school funding through which school districts fund their budgets using a combination of local property taxes and State aid.[1]  Ibid.  The core of the formula is the "adequacy budget," which is designed to support the majority of educational resources needed by children in each district.  N.J.S.A. 18A:7F-51.

The adequacy budget is an estimate of what it costs each district to provide the "comprehensive curriculum standards" (CCCS)[2] to each student according to the district's enrollment and student characteristics.  In addition to the CCCS, N.J.S.A. 18A:7A-10 requires the Commissioner of DOE to develop and administer a monitoring system that evaluates school districts on five key components, known as the New Jersey Quality Single Accountability Continuum (NJQSAC).  The five areas encompassed by NJQSAC are instruction and program, personnel, fiscal management, operations, and governance.

---

[1]  The SFRA provides for several categories of State aid.  See, e.g., N.J.S.A. 18A:7F-52, -54 to -58 (providing equalization, preschool, special education, security, transportation, and adjustment aid).  "State aid" is a term that encompasses each of these categories.

[2]  Eventually CCCS became known as the New Jersey Student Learning Standards.  N.J.A.C. 6A:8-1.1.

N.J.S.A. 18A:7A-10. NJQSAC provides a mechanism for assessing the degree to which a district is providing T&E education. Ibid. The assessment may take into consideration a district's effectiveness over time. Ibid. The Commissioner determines the level of oversight and assistance a district requires based on the district's compliance with the indicators in NJQSAC. Ibid.

The adequacy budget is calculated on a per-pupil base cost that reflects the costs of educating an elementary school student with no special needs, with weighted adjustments to reflect the additional costs of educating middle school students, high school students, at-risk and limited English proficiency students, and students requiring special education. Abbott XX, 199 N.J. at 153. The DOE uses the adequacy budget in its formula for determining the amount of each district's State aid. See N.J.S.A. 18A:7F-51 and -53.

A primary distinction between the SFRA and older school funding formulae is that "virtually all aid under the new formula is wealth-equalized." Abbott v. Burke, 196 N.J. 544, 556 (2008) (Abbott XIX). This means that while the SFRA allocates State aid to school districts, the statute "requir[es] certain levels of funding at the local level." Abbott XX, 199 N.J. at 152. As a result, "[e]ach district contributes to its adequacy budget an amount that is based on its ability to raise local revenue." Abbott XIX, 196 N.J. at 556-57.

A-3642-22

This local portion, commonly known as the "local fair share" or "LFS," is calculated by "indexing the [D]istrict's property wealth and aggregate income using statewide multipliers." Id. at 557; see also N.J.S.A. 18A:7F-52(a). Each district "must provide the lesser of either its LFS, as calculated using the SFRA's formula, or the local share it raised in the previous year[,]" often referred to as the "required local share." Abbott XX, 199 N.J. at 155; N.J.S.A. 18A:7F-5(b). This is the district's minimum contribution to its annual budget.

Once the adequacy budget and LFS are calculated, DOE computes the allocation of "equalization aid" for each district. Equalization aid is a category of State aid to each district for general fund expenses to support the district in meeting the cost of CCCS. N.J.S.A. 18A:7F-53. Equalization aid is calculated by subtracting the district's LFS from its adequacy budget, provided that equalization aid shall not be less than zero. Ibid. The SFRA also contained a State aid growth limit, which capped the total percentage increase in State aid that a district could receive from year to year.

The SFRA's formula reflects the legislative intention that relatively wealthier municipalities will contribute proportionally more on a local level to their Districts' budgets than poorer municipalities, thus enabling the State to allocate school aid more equitably to needier districts. See N.J.S.A. 18A:7F-

44(d). Our Supreme Court found the SFRA to be constitutional shortly after its enactment. Abbott XX, 199 N.J. at 175.

In 2011, our Supreme Court revisited the SFRA due to funding shortages. Abbott v. Burke, 206 N.J. 332, 370 (2011) (Abbott XXI). Although the Court disapproved of the Legislature's failure to fully fund the SFRA formula as to Abbott[3] districts, it otherwise reaffirmed the constitutionality of the SFRA as to all other districts, even though the State aid for those districts due under the SFRA formula was not fully funded. Id. at 369-70.

In 2017, the Legislature took steps to address growing imbalances created by districts that were levying local property taxes well below their respective LFS. On July 24, 2018, the Legislature amended the SFRA with the passage of L. 2018, c. 67 (Chapter 67), which amended the formula to calculate the required local share. Pursuant to Chapter 67, in school years 2019-2020 through 2024-2025, certain districts that receive decreased State aid because of changes in the required local share are required to increase their tax levy by two percent over the prior year. L. 2018, c. 67, § 2; N.J.S.A. 18A:7F-5(d). As a result, certain

---

[3] See Abbott v. Burke, 119 N.J. 287, 384-85 (1990) (Abbott II) (concluding that education provided to school children in poor communities was inadequate and unconstitutional and mandated that State funding for these districts be equal to that spent in the wealthiest districts in the State).

districts are required to contribute more to fund schools through their local levies. To make up for the anticipated reduction in State aid, Chapter 67 provided districts with new tools to raise revenue.

At the same time, the Legislature enacted L. 2018, c. 68 (Chapter 68) (codified at N.J.S.A. 40:48C-15), which permitted a municipality with a population greater than 200,000 to collect an employer payroll tax for general municipal purposes at a rate of up to one percent of the employer's payroll. In municipalities with a median household income of $55,000 or greater (such as Jersey City), the employer payroll tax revenues were to be used exclusively for school purposes. N.J.S.A. 40:48C-15. The Assembly Budget Committee Statement issued June 18, 2018, with respect to Chapter 68 stated:

> This bill would allow all other municipalities with a population of at least 200,000, presently only Jersey City, to impose and collect an employer payroll tax.
>
> This bill would require that employer payroll tax revenues be paid to the school district on a monthly basis if the municipality has a median household income of $55,000 or more. Presently, Jersey City is the only municipality under the bill that would be both eligible to impose an employer payroll tax and meet the median household income threshold which triggers the requirement to use employer payroll tax revenues for school purposes.

In response to the 2018 amendments, Jersey City adopted Ordinance 18-133 imposing a one percent employer payroll tax effective January 1, 2019. The Jersey City payroll tax generated $30.7 million dollars in 2020; $86 million dollars in 2021; $86 million dollars in 2022, and $65 million dollars in 2023.

Jersey City's History with Respect to T&E

In 1989, the State first took control of JCBOE because it had failed to provide T&E education. Abbott II, 119 N.J. at 352. Thereafter, the State worked with the District over the course of nearly two decades and conducted multiple reviews to determine whether the District was meeting the requirements of NJQSAC. The number of students in the District had remained static with approximately 30,000 students between 2009 and 2021. Ultimately, in 2017, DOE recommended a return of full control to JCBOE. The DOE's recommendation was based on the progress the District had made in meeting the requirements of NJQSAC, in particular in the areas of instruction and program, the aspect of NJQSAC most closely connected to providing T&E education.

By way of example, between 2012 and 2017, the four-year graduation rate in the District increased from 67.3% to 77.2%. The number of students in advanced placement courses increased by 40%. Every high school in the District was offering advanced placement courses and opportunities for students to take

credit-bearing courses at local colleges, when in the past only a few schools had offered those options.

With respect to scores in math and English language arts (ELA), the District was "closing the gap" between its students and the average New Jersey student with respect to meeting grade level expectations.[4]  For example, the percent of students meeting or exceeding grade expectations rose from 2015 to 2017.  With respect to ELA, in 2015, 30% of third graders were on grade level, and in 2017, that number was 39%; in 2015, 35% of fifth graders were on grade level, and in 2017, that number was 48%; in 2015, 34% of seventh graders were on grade level and in 2017, that number was 50%; in 2015, 33% of eleventh graders were on grade level, and in 2017, that number was 49%.  With respect to math, in 2015, 29% of third graders were on grade level, and in 2017, that number was 38%; in 2015, 25% of seventh graders were on grade level, and in 2017, that number was 30%.

In 2017, the District matched the State's average student growth percentile scores of fifty in both math and ELA.  In addition, the District's NJQSAC score in 2017 for instruction and program was ninety.

---

[4]  The record does not include State averages for percentages of students on grade level.

A-3642-22

On October 13, 2020, the DOE submitted a Highly Skilled Professional Narrative Report which described educational progress made in the District.  On September 14, 2022, the DOE certified that Jersey City was "high performing" on the NJQSAC.

Jersey City's History with the SFRA Funding

For the 2008-2009 school year, the first year of funding under the SFRA, the adequacy budget for JCBOE was $473,854,172; the State contributed $277,591,645 in equalization aid; and JCBOE contributed $86,122,268, even though its LFS was calculated to be $196,262,527.  That left a shortfall of $111,159,233, which the State contributed in the form of adjustment aid.  Thus, for this school year, JCBOE operated at slightly above the adequacy budget amount.

For the 2009-2010 school year the adequacy budget was $486,315,450; the State contributed $277,385,300 in equalization aid; JCBOE's LFS was $208,930,150; and JCBOE contributed only $93,012,048 toward its LFS, leaving a gap of $115,918,101.  The State contributed $109,947,015 in adjustment aid, and JCBOE was below adequacy by $5,971,086.

For the 2010-2011 school year, the adequacy budget was $489,564,151; the State contributed $264,868,928 in equalization aid; and JCBOE contributed

11

$102,313,254 toward its LFS of $224,695,223.  Because of a statewide reduction in the SFRA contributions that year, JCBOE operated at under the adequacy budget by $26,835,520.

For the 2011-2012 school year, the adequacy budget was $497,534,646; the State contributed $270,464,463 in equalization aid; the LFS was $227,070,183; and JCBOE contributed $104,359,519 toward its LFS, leaving a shortfall of $122,710,664.  The State contributed $115,906,457 in adjustment aid and $125,411 in EAA.  JCBOE operated at below the adequacy budget in the amount of $6,678,796.

For the 2012-2013 school year, the adequacy budget was $491,127,159; the State contributed $267,455,194 in equalization aid; the LFS was $223,671,965; and JCBOE contributed $106,446,709 toward its LFS, leaving a shortfall of $117,225,256.  The State paid $115,630,805 in adjustment aid and $125,411 in EAA.  Thus, that year JCBOE was below adequacy by $1,469,040.

For the 2013-2014 school year, the adequacy budget was $517,593,230; the State paid $271,448,973 in equalization aid; the LFS was $246,144,257; and JCBOE contributed $108,336,848 toward its LFS, leaving a gap of $137,807,409.  The State paid $114,452,158 in adjustment aid and $15,411 in EAA.  That year, JCBOE was $23,229,840 below adequacy.

For the 2014-2015 school year, the adequacy budget was $579,277,523; the State paid $268,131,853 in equalization aid; JCBOE's LFS was $311,145,670; JCBOE contributed $109,961,901 toward its LFS; and the local levy gap was $201,183,769. The State paid $109,416,061 in adjustment aid. JCBOE was $91,642,297 below adequacy.

For the 2015-2016 school year, the adequacy budget was $601,290,845; the State paid $265,544,879 in equalization aid; and JCBOE's LFS was $335,745,966. JCBOE contributed $112,161,139, leaving a gap of $223,584,827. The State paid $110,955,488 in adjustment aid, and JCBOE was below adequacy by $112,503,928.

For the 2016-2017 school year, the adequacy budget was $588,836,489; the State paid $252,376,000 in equalization aid; the LFS was $336,460,489; and, of that amount, JCBOE contributed $114,404,361. The State paid $121,040,153 in adjustment aid, and JCBOE was below adequacy by $100,890,564.

For the 2017-2018 school year, the adequacy budget was $584,758,085; the State paid $214,496,630 in equalization aid; the LFS was $370,261,455; and JCBOE contributed $116,692,448. The State paid $158,883,988 in adjustment aid, and JCBOE was below adequacy by $94,559,608.

For the 2018-2019 school year, the adequacy budget was $590,163,255; the State paid $191,268,212 in equalization aid; the LFS was $398,895,043, and JCBOE contributed $124,367,357 toward its LFS. The State paid $181,607,480 in adjustment aid, and JCBOE was below adequacy by $92,794,795.

Jersey City's Wealth and Property Values

Kevin Dehmer, Assistant Commissioner of Finance in DOE, certified that according to the property tax table on the New Jersey Department of Community Affairs' (DCA) website, in 2009, the average residential property value in Jersey City was $93,704 while the average total property tax bill was $5,605.[5] Thus, Jersey City's actual average school tax bill was $1,525. That same year, the State's average residential property value was $290,502, and the State's average total property tax bill was $7,281. The State's actual school tax bill in 2009 was $3,869.

However, in 2018, Jersey City's average residential property value had risen to $433,320, while the State's average property value was $316,710; yet the average total tax bill in Jersey City was $6,445, with a school tax of only

_____

[5] Appellants agreed to Dehmer's statements regarding property values and taxes taken from the DCA website.

$1,559, while the State's average total property tax bill that year was $8,767, and the State's average school levy was $4,610.

"Uncapped aid" is the amount a district should receive pursuant to the SFRA without accounting for adjustment aid. Between the years 2009 and 2023, the State contributed significantly more to the District than the amount of uncapped aid calculated under the SFRA.

In addition, Jersey City's mean household income was $74,013 in 2010 and $117,709 in 2019 according to the 2019 census as reflected in the parties' statement of undisputed material facts. However, the mean household income in New Jersey was $90,882 in 2010, and $119,301 in 2019.

The New Jersey State Comptroller, A. Matthew Boxer, had authored a report in 2010 regarding municipal tax abatements. The report discussed tax abatements in Jersey City, which at that time exempted $2 billion dollars in property from taxes. Consequently, in 2010, Jersey City was not collecting potential taxes of $120 million dollars per year.

All State aid must be approved through legislative appropriation. The New Jersey Constitution requires an annual balanced budget. N.J. Const. art. VIII, § 2, ¶ 2. The State operates on a fiscal year basis that begins on July 1 and ends on June 30. Each year in February or March, the Governor presents a

15

budget message to the Legislature in which he or she presents the balances of State funds on hand, the administration's revenue projections for the upcoming fiscal year, and proposed spending for the upcoming fiscal year.  N.J.S.A. 52:27B-20.  Proposed spending on School aid is included in the Governor's budget message.  Although the Governor has the statutory authority to propose a budget, the power to appropriate State funds is vested exclusively in the Legislature through enactment of an Appropriation Act.  See N.J. Const. art. VIII, § 2, ¶ 2.

Within two days of the Governor's budget message, the Commissioner must notify each school district of the amount of State aid proposed by the Governor for the district for the upcoming fiscal year.  N.J.S.A. 18A:7F-5.  This is known as an "aid notice."  However, because all appropriations are subject to legislative approval, no allocation of State aid is certain until the annual Appropriations Act is enacted.

Chapter 67 was enacted shortly after the start of fiscal year 2019 and the enactment of the Appropriations Act and a supplemental Appropriations Act for that fiscal year.  To address funding inequities in the short term and to transition to Chapter 67 funding, the Legislature included provisions in the fiscal year 2019 Appropriations Act that modified the Governor's budget message for fiscal

year 2019 with respect to State aid. See L. 2018, c. 53 (Appropriations Act) (Chapter 53); L. 2018, c. 54 (Supplementary Appropriations Act) (Chapter 54). In short, these Acts provide if a district's prior year State aid was less than its uncapped aid, that district received an increase in State aid for fiscal year 2019; and, if a district's prior year State aid was more than its uncapped aid, the district saw a decrease in State aid for fiscal year 2019. Chapter 67 follows a similar formula by defining a "[S]tate aid differential," which is a measure of the extent to which a district is overfunded and underfunded. The State aid differential is used to calculate gains and losses in State aid for the district.

Chapter 53 and 54 also require that "[a]ny reduction in State aid pursuant to this provision shall first be deducted from the amount of adjustment aid in the school district's March 2018 aid notice . . . ." L. 2018, c. 53 and c. 54. Essentially, more than a decade after the SFRA's enactment, the Legislature began phasing out the "transitional assistance" that it had provided in the form of adjustment aid. For fiscal year 2019, the Commissioner distributed State aid in accordance with the mandates in Chapters 53, 54 and 67.

### The Litigation

On April 29, 2019, JCBOE and one of its public-school students, through his guardian ad litem, filed a verified complaint in the Law Division challenging

A-3642-22

school funding in the District. The District is an Abbott district. The verified complaint named the State of New Jersey, the DOE, Commissioner of Education Dr. Lamont Repollet,[6] the New Jersey Office of Management and Budget, the New Jersey Department of Treasury, and State Treasurer Elizabeth Maher Muoio, as defendants. Appellants sought a declaration that the SFRA is unconstitutional as it denies the JCBOE with the ability to provide its students with T&E education and injunctive relief. Following the entry of an order to show cause, the matter was transferred to Mercer County.

On July 23, 2019, appellants filed a first amended verified complaint adding a challenge to the constitutionality of the Educational Facilities Construction and Financing Act (EFCFA), N.J.S.A. 18A:7G-1 to -48, and including as additional defendants the New Jersey Schools Development Authority and Manuel M. Da Silva, its interim Chief Executive Officer.

On September 1, 2020, appellants filed a second amended verified complaint, the operative pleading here, substituting G.D., through his guardian ad litem Nicole Gohde, in place of the original student plaintiff. The second amendment verified complaint included the number of personnel, such as media

---

[6] Repollet was ultimately substituted with Acting Commissioner Angelica Allen-McMillan.

and technology specialists, teachers, and guidance counselors, that were reduced as a result of budgetary shortfalls in the District.

In March 2021, Franklin Walker, former district superintendent, was deposed. He testified that, for the 2018-2019 school year, as a result of budget reductions, the District cut a third grade reading recovery program as well as math and reading coaching, teacher aides, and extended day programs. The third grade reading recovery program involved thirty-five teachers who were giving individual assistance to third graders who could not read. Lorenzo Richardson, a board member with JCBOE, was also deposed in March 2021, and discussed the dilapidation of JCBOE buildings.

Melvin L. Wyns, an expert in school funding, provided a certification on behalf of JCBOE. According to Wyns, JCBOE received funding at its adequacy budget level only in the first year the SFRA was implemented, and thereafter, JCBOE public schools were funded at a level below that which is necessary to provide T&E education.

Wyns provided information about the funding for JCBOE between the 2008-2009 and 2019-2020 school years and concluded that the adequacy budget for JCBOE's schools increased by more than 31%, the LFS increased nearly 100%, and equalization aid decreased more than 46%. Also, according to Wyns,

during that same period, the local levy increased by nearly 57%. However, Wyns stated the SFRA's two-percent property tax cap had constrained the speed at which JCBOE was able to increase its local revenue.

On July 20, 2022, respondents moved for summary judgment seeking a ruling that the SFRA and EFCFA were constitutional as applied to Jersey City. Appellants filed a cross-motion for summary judgment seeking a ruling that the application of the SFRA to Jersey City was unconstitutional.

On September 26, 2022, Dr. Norma Fernandez, the Superintendent of JCBOE, certified that the District had to reduce its provision of services as a result of underfunding. For example, she explained the District reduced the number of licensed clinical social workers, extension teachers, and teacher aides; kindergarten classrooms were overcrowded; and teacher salaries were not competitive with more affluent districts. Fernandez also stated that she was receiving significant pushback from local officials regarding raising property taxes.

In its forty-five-page written opinion, the court found that summary judgment was appropriate because there were no disputed material facts, and the only issues before the court were legal questions. The court determined that the application of the SFRA to Jersey City was not unconstitutional. The court

reasoned it was constitutional for the State to expect the District to contribute to its budget, and it was not the State's responsibility to subsidize the LFS to ensure that the District was spending an amount equal to its adequacy budget. The court emphasized that adjustment aid under the SFRA was meant to be temporary. The District's raising of revenue from taxes was low in relation to its property values, which the court found had significantly increased in recent years and were higher on average than property values in the remainder of the State. The court noted that the amount of aid JCBOE received significantly exceeded what it was entitled to under the SFRA.

The court determined the SFRA amendments were constitutional, and the Legislature had provided the District with a "cushion" by implementing a payroll tax to defray expenses while the District gradually raised its property taxes. Finally, the court found appellants did not provide any evidence that JCBOE students were not receiving T&E education and pointed to DOE's determination that the District was high performing. For these reasons, the court granted respondents' motion for summary judgment[7] and denied appellants' cross-motion

---

[7] The court dismissed JCBOE's claim regarding EFCFA, and appellants do not appeal from that determination.

for summary judgment. Memorializing orders were entered. This appeal followed.

Appellants raise the following two arguments on appeal: (1) the court erred by failing to evaluate the State's implementation of the SFRA in Jersey City as a funding measure to remedy the longstanding violation of a T&E education in the Abbott litigation; and (2) a remand is required to determine whether the State has allowed deficiencies of a constitutional dimension requiring remediation to emerge in the SFRA's implementation in Jersey City.

## II.

An appellate court reviews a grant of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires the appellate court to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). An appellate court does not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014). Issues of fact should be determined at trial and not be decided on affidavits. Carmichael v. Bryan, 310 N.J. Super. 34, 47 (App. Div. 1998).

A.

Appellants argue that the SFRA was enacted to remedy the ongoing violation of T&E education in Abbott districts. According to appellants, the court ignored this fundamental constitutional objective and did not analyze the factual record as to whether the State's implementation of the SFRA in Jersey City remedied the continuing T&E education violations in Jersey City, as required by Abbott XX.

Respondents counter that the State is not obligated to make up the shortfall in the District's budget because Jersey City is under taxing. Respondents point out that JCBOE does not dispute the State's calculation of equalization aid and does not deny that Jersey City's property and wealth has dramatically increased in the last decade. Respondents maintain the adequacy budget is not an indicator

23

of whether T&E education is being provided because many districts are able to provide T&E education while spending below adequacy.

We are unpersuaded by appellants' arguments. The court specifically addressed appellants' arguments as to whether there were continuing T&E education violations in Jersey City and determined that appellants failed to establish that the District's students were not receiving T&E education. Appellants claimed that certain educational programs had been cut, teacher salaries were low, and licensed social workers were reduced in the District.

But even if all of appellants' allegations are true, in and of themselves, those claims are not sufficient to establish that the SFRA was implemented improperly resulting in a situation where JCBOE failed to provide T&E education. Moreover, the 2018 DOE report emphasized the progress being made in academics and graduation rates in the District, and in 2022, the DOE Commissioner characterized the District as high performing on the NJQSAC.

Even though there were budget cuts resulting in loss of programs and personnel, appellants did not provide evidence that the District failed to provide T&E education. Our de novo review of the record reveals that the court addressed this issue by stating that appellants provided no evidence to establish that the District was failing to provide T&E education.

Further, the court cited Abbott II, 119 N.J. at 313, for the notion that the claim of a deprivation of T&E education is only viable upon a showing that students are not being equipped for their roles as citizens and competitors in the labor market. Instead, the court found, and we agree, that evidence in the record established that DOE had returned full local control to JCBOE because it was high performing on the NJQSAC, an indicator of whether the District was providing T&E education.

Additionally, graduation rates had increased, advanced placement courses were offered in every high school, and students were tending toward the State average for being on grade level in math and ELA. Thus, we agree with the conclusion of the court that evidence in the record supported a finding that JCBOE was providing T&E education.

Appellants cite Abbott XIX, 196 N.J. at 551, and Abbott XX, 199 N.J. at 166, for the proposition that our Supreme Court imposed conditions on the future implementation of the SFRA and required that it was only constitutional so long as it remedied the violations that had existed in providing T&E education in Abbott districts.

It is true that Abbott XX provided for future regulation of Abbott districts to ensure that those districts continued to provide T&E education. 199 N.J. at

25

166. However, Abbott XX also envisioned a future where each district would raise revenue in accordance with its LFS. Ibid. In fact, long before the 2018 amendments to the SFRA, Abbott XX envisioned a phasing out of aid because each district would raise revenue in accordance with its LFS. Ibid.

Having reviewed the record, we agree the evidence supports the court's finding that JCBOE failed to raise sufficient revenue in accordance with its LFS, notwithstanding the enormous change in property values in the District. In fact, the 2018 amendments were specifically geared to districts that had failed to raise the appropriate revenue to support their LFS. As noted, in the Assembly Budget Committee Statement issued June 18, 2018, with respect to L. 2018, c. 68, Jersey City was singled out as the only District in the State that was qualified, according to the statute, to impose a payroll tax to meet its school needs. Thus, we agree with the court's conclusion that the decreased funding in the District was directly related to Jersey City's failure to raise the proper amounts through tax revenue to fund its LFS, and this was not due to any deficiency in the State's implementation of the SFRA in the District.

Appellants also cite Abbott XX, 199 N.J. at 146-47, for the proposition that the State was only permitted to apply the SFRA formula to Abbott districts so long as those districts were not regressing to prior conditions that existed

when the Abbott litigation began. Appellants assert that this required the State to fund the Abbott districts at optimal levels to remediate those past T&E education violations. Appellants argue that, instead, Jersey City has been underfunded since the beginning of the implementation of the SFRA.

Again, we are unpersuaded. For one thing, as noted, Abbott XX envisioned a phasing out of aid as districts were able to begin to raise their LFS. 199 N.J. 166. And, there is absolutely no evidence in the record that JCBOE has returned to the "deplorable conditions" that existed previously. Instead, the evidence supports a finding that JCBOE has made significant progress in providing T&E education. Moreover, as mentioned, Jersey City is capable of raising revenue based on its increased property values. We reiterate, the payroll tax legislation was specifically enacted to assist Jersey City to make up the shortfall in raising funds to meet its LFS. In fact, the evidence supports the finding that the payroll tax has made a substantial impact on providing revenue for JCBOE.

Abbott XX was intended to give State aid to districts that needed transition time to get their LFS to adequate levels. Here, property values have increased in Jersey City beyond the State average, but the local tax revenue in that District has not kept pace with the change in property values. Any shortfall experienced

by the District is a result of the lack of property tax revenues, and not because the SFRA is not properly implemented. Thus, we reject appellants' argument that the State's implementation of the SFRA was contrary to Abbott XX.

B.

Next, appellants argue that our Supreme Court imposed two interrelated mandates on the State to ensure that the SFRA satisfied the constitutional mandate to provide T&E education to New Jersey students: (1) that the State fully fund the SFRA in the first three years; and (2) every three years thereafter the State should perform a formal rigorous review as to whether the SFRA was being implemented correctly. Abbott XXI, 206 N.J. at 375-76.

According to appellants, the State failed to fully fund the SFRA, and the Supreme Court was therefore required to intercede and order it to do so in 2011. Thereafter, appellants aver the State failed to fund the SFRA at optimal levels from 2013 through 2020, and, as a result, the shortfall in the District's budget significantly grew during that period. Appellants contend that this establishes the State failed to operate the SFRA in Jersey City at an optimal level and also failed to engage in a meaningful review of the funding. Appellants' argument is belied by the record.

28

The State provided aid to Jersey City beyond what was required in an effort to assist the District given that it was not raising its LFS. From 2009 to 2023, the State contributed significantly more than the uncapped aid the District was entitled to pursuant to the SFRA.

C.

Appellants also argue that the 2018 amendments to the SFRA substantially decreased the State's responsibility to fund the adequacy budget and this is not constitutional because the District will not be able to provide T&E education under those circumstances. We disagree.

The 2018 amendments were passed to ensure districts received the proper amounts and that each district would be required to raise its LFS. If Jersey City raised the proper amount of funds in accordance with its LFS, there would be no need for additional State aid. The State has not stopped contributing to the adequacy budget. Rather, the State has required Jersey City to raise the proper amount of revenue—either from property taxes or from the payroll tax—such that the State will no longer be expected to make up the difference.

D.

Next, appellants argue that the court's decision sanctions the underfunding of the SFRA in violation of the holding in Abbott XXI, 206 N.J. at 360. Here,

the court's grant of summary judgment is consistent with the Legislature's objective to fund the SFRA through a combination of State contributions and the District's payment of its LFS. Up until now, the undisputed facts show Jersey City has been remiss in raising funds in accordance with its LFS, notwithstanding a significant change in property values in the District. Thus, we are satisfied the court's decision comports with the goals of the Legislature and goals of <u>Abbott XXI</u> that Jersey City should raise its LFS to provide T&E education in the District and should no longer be permitted to rely on the State to make up the shortfall.

### III.

Finally, appellants argue that the matter should be remanded to determine whether the State has allowed deficiencies of a constitutional dimension requiring remediation to emerge in the SFRA's implementation in Jersey City. Appellants argue that they made a prima facie showing of the problems inherent in the State's implementation of the SFRA in the District. Again, we disagree.

Appellants have established that there is a shortfall in funds for the District. However, as stated, this is not a result of a problem with the State's implementation of the SFRA. Instead, it is a result of the District's failure to raise the appropriate amount of funds through property taxes. At the point when

the District raises sufficient taxes, there will be no shortfall in funds for the District.

Appellants contend that the court did not evaluate the deficits and deficiencies in the operation of the SFRA in Jersey City. According to appellants, the court failed to answer the core question as to whether operational deficiencies have emerged in Jersey City of a constitutional dimension warranting a remand.

The court found, and we agree, that the evidence presented indicated that JCBOE is providing T&E education because of rising test scores and improved graduation rates. Moreover, any funding shortages are a direct result of the District's decision not to raise the appropriate amount of property taxes. Therefore, there is no problem with the SFRA, only a problem with the District's compliance with its obligation to raise the amount needed for the LFS.

Appellants cite Abbott XIX, 196 N.J. at 565, and Abbott XXI, 206 N.J. at 394-95, where our Supreme Court held that the question as to whether the SFRA was constitutional should not be decided on summary judgment, but, instead, required development of an evidential record. Therefore, appellants maintain that the court erred by deciding this matter on summary judgment without developing an evidential record.

We reiterate that the court found, and we agree, that the reason for the shortfall of funding in Jersey City was because the District failed to raise the correct amount through local property taxation, and not because there was a deficiency in the operation of the SFRA in Jersey City. The parties all conceded that the evidence introduced regarding Jersey City property values and taxation was accurate and there were no material factual disputes. At bottom, regarding whether operational deficiencies of a constitutional dimension have arisen in the District, appellants failed to provide any prima facie evidence. To the contrary, credible evidence in the record indicates that the District is progressing in its provision of T&E education. Because there were no material factual disputes, summary judgment was properly granted to respondents.

Appellants also argue that the court did not develop the record and solely based its decision upon affidavits and certifications. Summary judgment should be granted when the pleadings, depositions, answers to interrogatories and affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540 (1995). Here, there were no factual disputes, only legal issues, and the court properly granted summary judgment.

32

Also, according to appellants, the burden of proof to demonstrate compliance with <u>Abbott XX</u> is on the State, and not on JCBOE. In support of their argument, appellants cite <u>Abbott XXI</u>, 206 N.J. at 396, where our Supreme Court stated that the burden was on the State to show that the SFRA's current level of funding could provide for a constitutionally mandated education. However, respondents have offered evidence that DOE found the District was providing a T&E education, and appellants do not dispute that evidence.

At base, appellants assert their disagreement with the amount of State aid appropriated to them by the Legislature for the fiscal years stated and the amount of State aid they expect to receive in future years to the extent that the Legislature continues to appropriate State aid in accordance with the SFRA, as amended by Chapter 67. Because appellants have not alleged a viable constitutional claim under the T&E Clause, their disagreement with the Legislature's appropriations must be addressed to the elected branches of government, which have the sole authority to determine how to appropriate State funds, in the absence of a constitutional mandate.

To the extent we have not specifically addressed any of appellants' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3642-22