**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3086-22

HOPEWELL BOROUGH, a
political subdivision of the State
of New Jersey, PENNINGTON
BOROUGH, a political
subdivision of the State of New
Jersey, PAUL ANZANO,
individually, and JAMES DAVY,
individually,

      Plaintiffs-Appellants,

v.

HOPEWELL TOWNSHIP, a
political subdivision of the
State of New Jersey and
COURTNEY PETERS-MANNING,
in her official capacity as Mayor,
MICHAEL RUGER, in his official
capacity as Deputy Mayor,
DAVID CHAIT, in his official
capacity as Committeeperson,
KEVIN KUCHINSKI, in his official
capacity as Committeeperson,
UMA PURANDARE, in her official
capacity as Committeeperson, U.S.
HOME AT HOPEWELL PARC
URBAN RENEWAL, LLC, and
U.S. HOME CORPORATION,

d/b/a LENNAR,

Defendants-Respondents,

and

FAIR SHARE HOUSING CENTER,

Defendant/Intervenor-
Respondent.

_____

Argued October 1, 2024 – Decided August 21, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0497-22.

Walter R. Bliss, Jr. argued the cause for appellants (Law Offices of Joseph C. Tauriello, PC, and Law Offices of Walter R. Bliss, Jr., attorneys; Joseph C. Tauriello, Walter R. Bliss, Jr., and Virginia Kerr, of counsel and on the briefs).

Steven P. Goodell argued the cause for respondents Hopewell Township, Courtney Peters-Manning, Michael Ruger, David Chait, Kevin Kuchinski, and Uma Purandare (Parker McCay PA, attorneys; Steven P. Goodell, of counsel and on the brief; Alexis C. Smith, on the brief).

Timothy M. Prime argued the cause for respondents U.S. Home at Hopewell Parc Urban Renewal, LLC, and U.S. Home Corporation (Prime & Tuval LLC, attorneys; Timothy M. Prime, on the brief).

William S. Fairhurst argued the cause for respondent Fair Share Housing Center (Fair Share Housing Center, attorneys; William S. Fairhurst, on the brief).

PER CURIAM

Plaintiffs appeal the trial court's order dismissing their complaint in lieu of prerogative writs. Plaintiffs challenged defendant Hopewell Township's (Township) adoption of Ordinance 22-1766, which, among other things, approved a financial agreement between co-defendants Township and U.S. Homes (Lennar) under the Long Term Tax Exemption Law (LTTEL), N.J.S.A. 40A:20-1 to -22. The agreement facilitated Lennar's construction of more than a thousand units of housing and provided for a thirty-year property tax exemption with a payment-in-lieu of taxes schedule. After the Township adopted the ordinance, plaintiffs sued to block the project, alleging that the Township's adoption was arbitrary and capricious. During the court's case management of the ensuing litigation, it issued an order barring discovery except for presentation of expert opinion testimony by each party. After a bench trial, the court found the Township was not arbitrary and capricious in adopting the ordinance, which satisfied the provisions of the LTTEL.

Plaintiffs allege the trial court committed error when it denied plaintiffs discovery and then misapplied the LTTEL. We affirm.

I.

A.

In 2015, Township filed a declaratory judgment action, seeking to have its affordable housing plan deemed compliant. After multiple parties intervened, the Township entered into a series of settlement agreements between 2017 and 2019. In 2019, the Township obtained an order from the trial court declaring the property designated for residential development was an area in need of redevelopment pursuant to the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to 40A:12A-49.

After the execution of redevelopment agreements[1] and subsequent litigation to resolve municipal sewer service for the project, in October 2021, Lennar applied for a thirty-year long term tax exemption to cover all development phases of the project. On January 24, 2022, the Township introduced Ordinance

---

[1] First, the Township adopted an ordinance designating Block 93, Lots 5.01 and portions of 5.02 and 6.02 as areas in need of redevelopment, then adopted legislation authorizing corresponding redevelopment plans. The plans incorporated both market rate and affordable housing elements. After approving the plans, the Township next designated Lennar as the redeveloper for the Block 93 properties, then entered into two redevelopment agreements with Lennar, one for the north portion of the site and one for the south-east portion of the site. The north-site redevelopment agreement, the location of Lennar's proposed affordable housing development, is the subject of this litigation.

22-1766, which authorized the financial agreement with Lennar. After proper notice, the Township conducted a public hearing on February 22, 2022. The hearing was attended by the Township's governing body, redevelopment counsel, financial and redevelopment experts, and the public, which included officials from neighboring communities. According to the record, several Hopewell Township committee members including Mayor Courtney Peters-Manning, Deputy Mayor Michael Ruger, Committee member Kevin Kuchinski, Committeeman David Chait, and Committeewoman Purandare, spoke in support of the payment in lieu of taxes (PILOT)[2] agreement at the public hearing.

At the hearing Township officials discussed the statutory purposes and benefits of PILOTs authorized under the LTTEL, particularly in the context of affordable housing. Some members of the public stated their opposition, pointing out the impact of long-term PILOT agreements on school tax revenue. Public officials from Pennington and Hopewell Boroughs also attended and voiced opposition to the PILOT, but they did not present expert testimony at that time. After the hearing, members of the Township Committee expressed their

---

[2] To encourage investment, municipalities and developers may enter into financial agreements that provide tax exemptions on land and improvements, as authorized by the LTTEL, N.J.S.A. 40A:20-1 to -22. These agreements typically take the form of payments in lieu of taxes (PILOTs).

A-3086-22

support for the ordinance, emphasizing the role of the agreement in facilitating affordable housing, redeveloping an underutilized site, and mitigating the tax burden on existing residents. The Township Committee unanimously adopted the ordinance.

On March 15, 2022, the Township and Lennar executed the financial agreement[3] which established the terms of the PILOT, as authorized in the ordinance. The agreement set forth the duration of the PILOT, the annual service charge applied, and the general obligations of the parties. The financial agreement between the Township and Lennar included three sections pertinent to our review.

Section 9.01, titled Relative Benefits of the Project, provides:

> In accordance with the Long Term Tax Exemption Law, specifically N.J.S.A. 40A:20-ll(a), the Township hereby finds and determines that this Agreement is to the direct benefit of the health, safety, welfare and financial well-being of the Township and its citizens despite the tax exemption granted hereunder. The Property is currently underutilized. The Project will redevelop the site with a mix of approximately 1,077 residential units consisting of apartments, townhomes, stacked townhomes, condominiums and single family homes, subject to Article III of the Redevelopment

---

[3] We note that the financial agreement, not set forth in its entirety in this opinion, contains a comprehensive recital of the development project history. Because that history is part of the record we have reviewed in deciding this matter, we see no need to recite all of it here.

Agreements, at least the lesser of 20% of the total residential units or 216 of such units will be Affordable Units, to be sold or leased at market rates and affordable rates, as applicable, in accordance with the Redevelopment Plan, the Redevelopment Agreements and Site Plan Approval. The Project will create approximately 2,410 construction jobs and 10 permanent jobs. The Project will generate significant amounts of new (otherwise unavailable) municipal revenues through the Annual Service Charge, construction permit fees and water/sewer fees. More importantly, the Project will help the Township fulfill its constitutional obligation to provide housing opportunities for households with limited incomes. Considering current market conditions, economic factors and development costs impacting this Project, it is not financially feasible to undertake the development of this Project in the absence of the tax exemption provided for herein.

Section 9.02, titled Importance of Tax Exemption, states in pertinent part:

In accordance with the Long Term Tax Exemption Law, specifically N.J.S.A. 40A:20-11(b), the Township has reviewed the [a]pplication and the accompanying financial information and it has determined that this Agreement is a critical incentive for [Lennar] to undertake the Project in the Township due to the extraordinary costs associated with the development of the [p]roperty. The tax exemption permits the development of underutilized property and provides a stream of revenue in the form of Annual Service Charges. The Annual Service Charge will allow the units to be sold at marketable prices and leased at marketable rates, which will ensure the likelihood of success of the project and ensure that it will have a positive impact on the surrounding area. The tax exemption permits the development of the Project in an

7

area that cannot otherwise be developed in its proposed scope by reducing the expenses associated with the ownership of the project. Reduced expenses allows for more competitive purchase prices and rents, thus helping to ensure the project's success. . . . Considering current market conditions, economic factors and development costs impacting this project, it is not financially feasible to undertake the development of this project in the absence of the tax exemption provided for herein. Without the project, the benefits described herein would not be realized.

Section 16.14 of the agreement, titled Use of Annual Service Charge Proceeds, states in pertinent part, "[t]he Township may, in its sole discretion, discuss the potential impact of the project on the Hopewell Valley Regional School District with the School Board and the potential use of a portion of the [PILOT] proceeds to address such impact."

B.

After the financial agreement was executed by the Township and Lennar, plaintiffs filed a complaint in lieu of prerogative writs seeking to overturn the ordinance and the agreement. Plaintiffs argued that Ordinance 22-1766 was invalid because it: was adopted in an arbitrary and capricious manner; violated the LTTEL; was adopted for an unlawful purpose that purposely evades the regional school funding formula set forth in N.J.S.A. 18A:13-23; and violated

8

the Thorough and Efficient Education Clause (T&E clause) of the New Jersey Constitution by wrongful appropriation of regional school district funds.

Shortly after the complaint was filed, the court granted the Township's motion to dismiss the committee members in their individual capacities, then entered an order establishing a discovery schedule. Approximately one month later, during the initial discovery stages, Lennar filed a motion to quash plaintiffs' discovery demands and the Township moved for a protective order pursuant to Rule 4:10-3 to prohibit further discovery. The Fair Share Housing Center (FSHC) next intervened on behalf of the defendants.

The court granted both applications, quashing further discovery and striking the parties' interrogatories and requests for production of documents. The court also issued an order permitting the parties to submit expert reports. On May 1, 2023, the court conducted a hearing. It reviewed the submissions, including the dueling expert reports, and heard argument of counsel. On May 12, 2023, the court entered judgment for defendants. It dismissed plaintiff's complaint with prejudice, finding: the Township's ordinance and PILOT agreement complied with the LTTEL; the ordinance and the PILOT were adopted for a lawful purpose; and the Township's adoption of the ordinance was not arbitrary, capricious or unreasonable.

A-3086-22

On appeal, plaintiffs present two main arguments: first, that the LTTEL obligates the governing body to make an express finding, supported by substantial evidence, that the project would be financially infeasible without a tax exemption; and second, that the court erred by denying them further discovery.

II.

We consider the applicable standards of review.

First, municipal ordinances are presumed to be valid, and the presumption of validity may not be overcome unless the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." Berardo v. City of Jersey City, 476 N.J. Super. 341, 355 (App. Div. 2023) (quoting Riggs v. Twp. of Long Beach, 109 N.J. 601, 610-11 (1988)) (quoting Bow & Arrow Manor v. Town of West Orange, 63 N.J. 335, 343 (1973)). The party challenging the ordinance "bears the burden of overcoming the presumption." Riya Finnegan LLC v. Twp. Council of Tp. of South Brunswick, 197 N.J. 184, 204 (2008) (citing Ward v. Montgomery Twp., 28 N.J. 529, 539 (1959)). A "'[r]eviewing court[] should not be concerned over the wisdom of an ordinance'" and "'[i]f debatable, the ordinance should be upheld.'" Blackridge Realty, Inc. v. City of Long Branch, 481 N.J. Super.

183,194 (App. Div. 2025) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 253 (2015)) (quoting Rumson Ests., Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 350-51 (2003)).

Thus, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the [Township], but to determine whether the [Township] could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005). A reviewing court must not substitute its own judgment for that of the municipality unless there is a clear abuse of discretion. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013).

Next, we review questions of statutory interpretation de novo. Wiggins v. Hackensack Meridian Health, 259 N.J. 562, 574 (2025). To do that, "we look to the Legislature's intent as expressed in the statute's plain terms." Ibid. "'There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose . . . .'" Musker v. Suuchi, Inc., 260 N.J. 178, 185 (2025)) (quoting Fuster v. Twp. of Chatham, 259 N.J. 533, 547 (2025)) (omission in original) (quoting Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014)). "'We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense

to the legislation as a whole.'" Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted); see also N.J.S.A. 1:1-1 (requiring that statutory "words and phrases shall be read" in context "and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language"). "If the plain language of a statute is clear, our task is complete." Id. at 186 (quoting Savage v. Twp. of Neptune, 257 N.J. 204, 215 (2024)).

Finally, we use a deferential standard of review when considering a trial court's discovery orders. Keyworth v. CareOne at Madison Ave., 476 N.J. Super. 86, 100 (App. Div. 2023) (citing Brugaletta v. Garcia, 234 N.J. 225, 240 (2018)).

III.

A.

Plaintiffs first argue that the trial court applied the incorrect legal standard in analyzing their challenge to the long-term tax exemption created by the Township's adoption of Ordinance 22-1766. Plaintiffs' core contention is that the exemption the Township granted should have been accompanied by an express finding that the redevelopment project would not be financially feasible

without it.  Plaintiffs contend that without this finding by the Township, its adoption of the ordinance was arbitrary and capricious.  We find plaintiffs' argument unpersuasive.

To review challenges to municipal ordinances, Riggs v. Long Beach, 109 N.J. 601 (1988), established a four-part objective test for an ordinance's validity:

> First, the ordinance must advance one of the purposes . . . as set forth in N.J.S.A. 40:55D-2.  Second, the ordinance must be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements, unless the requirements of that statute are otherwise satisfied.  Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process, equal protection, and the prohibition against confiscation. Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements.
>
> [Id. at 611-12 (citations and internal quotation marks omitted).]

Two Riggs criteria are relevant to this appeal:  whether the ordinance is adopted in accordance with the enabling statute and whether the ordinance advances one of the legislative purposes of that statute.

Guided by Riggs and the well-established principles applicable to challenges to municipal ordinances, we first consider the relevant sections of the LTTEL.

13

N.J.S.A. 40A:20-8, establishes the detailed information required for Lennar's submission of its long-term tax exemption application to the Township. It states in pertinent part:

> Every urban renewal entity qualifying under this act, before proceeding with any projects, shall make written application to the municipality for approval thereof. The application shall be in a form, and shall certify to those facts and data, as shall be required by the municipality, and shall include but not be limited to:
>
> > a. A general statement of the nature of the proposed project, that the undertaking conforms to all applicable municipal ordinances, and that the project accords with the redevelopment plan and master plan of the municipality . . . .
> >
> > * * * *
> >
> > d. The source, method and amount of money to be subscribed through the investment of private capital, setting forth the amount of stock or other securities to be issued therefor or the extent of capital invested and the proprietary or ownership interest obtained in consideration therefor.
> >
> > e. A fiscal plan for the project outlining a schedule of annual gross revenue, the estimated expenditures for operation and maintenance, payments for interest, amortization of debt and reserves, and payments to the municipality to be made pursuant to a financial agreement to be entered into with the municipality.

f. A proposed financial agreement conforming to the provisions of section 9 of this act.

The application shall be addressed and submitted to the mayor or other chief executive officer of the municipality. The mayor or other chief executive officer shall, within 60 days of [their] receipt of the application thereafter, submit the application with [their] recommendations to the municipal governing body. The governing body shall by resolution approve or disapprove the application, but in the event of disapproval, changes may be suggested to secure approval. An application may be revised and resubmitted.

N.J.S.A. 40A:20-9 governs the financial agreement between Lennar and the Township. It states in pertinent part:

Every approved project shall be evidenced by a financial agreement between the municipality and the urban renewal entity. The agreement shall be prepared by the entity and submitted as a separate part of its application for project approval. The agreement shall not take effect until approved by ordinance of the municipality. Any amendments or modifications of the agreement made thereafter shall be by mutual consent of the municipality and the urban renewal entity, and shall be subject to approval by ordinance of the municipal governing body upon recommendation of the mayor or other chief executive officer of the municipality prior to taking effect.

The financial agreement shall be in the form of a contract requiring full performance within 30 years from the date of completion of the project. . . .

15

* * * *

The financial agreement shall contain detailed representations and covenants by the urban renewal entity as to the manner in which it proposes to use, manage or operate the project. The financial agreement shall further set forth the method for computing gross revenue for the urban renewal entity, the method of determining insurance, operating and maintenance expenses paid by a tenant which are ordinarily paid by a landlord, the plans for financing the project, including the estimated total project cost, the amortization rate on the total project cost, the source of funds, the interest rates to be paid on the construction financing, the source and amount of paid-in capital, the terms of mortgage amortization or payment of principal on any mortgage, a good faith projection of initial sales prices of any condominium units and expenses to be incurred in promoting and consummating such sales, and the rental schedules and lease terms to be used in the project. Any financial agreement may allow the municipality to levy an annual administrative fee, not to exceed two percent of the annual service charge.

[emphasis added.]

N.J.S.A. 40A:20-11, states in pertinent part:

A financial agreement approved under this act shall include findings by the municipality, approved by the municipal governing body, setting forth appropriate tax exemption provisions and an appropriate annual service charge schedule. . . based upon the provisions of [section 12 of this act] and the municipality's determinations as to:

a. The relative benefits of the project to the redevelopment of the redevelopment area when

16

> compared to the costs, if any, associated with the tax exemption;
>
> b. An assessment of the importance of the tax exemption to be granted in obtaining the development of the project and in influencing the locational decisions of probable occupants of the project or units of the project.
>
> [Ibid.]

Plaintiffs do not dispute that: Lennar submitted a complete application to the Township; the financial agreement itself contains the statutorily required findings; and the Township's adoption of the ordinance was procedurally proper. Since plaintiffs' core argument on appeal is that the trial court misinterpreted N.J.S.A. 40A:20-11, the first part of our Riggs' analysis, whether the ordinance was adopted in accordance with the LTTEL, turns on how we interpret the statute.

N.J.S.A. 40A:20-11(a) and (b) contain express language which requires the Township to include certain "findings" in its approved financial agreement. Those findings must include "appropriate tax exemption provisions" and "an appropriate annual service charge schedule," as well as the following: a cost benefit analysis comparing the benefits of the project with any identified costs "associated with the tax exemption;" and an assessment of the "importance" of the role the tax exemption played in persuading the developer as well as

subsequent purchasers and renters to participate in the project. Subsection (b), which requires the Township to assess the role the tax exemption played in attracting investment, contains no language requiring a finding that the exemption be "necessary" to attract investment.

We consider the ordinance language the Township used in making its findings. The recital section of the ordinance states that Lennar submitted an application for a tax exemption and a form of financial agreement to the mayor, who in turn submitted the documents to the Township Committee with a recommendation for approval. The operative section of the ordinance states that the Township approved the tax exemption application and authorized execution of the financial agreement. The Township's ordinance recites site-specific findings which track the LTTEL requirements.

For example, financial agreement states that the Township made findings which satisfy the statutory requirements, such as: "In accordance with the Long Term Tax Exemption Law, specifically N.J.S.A. 40A:20-11(a), the Township hereby finds and determines that this Agreement is to the direct benefit of the health, safety, welfare and financial well-being of the Township and its citizens despite the tax exemption granted hereunder" and, "[i]n accordance with the Long Term Tax Exemption Law, specifically N.J.S.A. 40A:20-11(b), the

Township has reviewed the Application and accompanying financial information and it has determined that this Agreement is critical to the Project in the Township due to the extraordinary costs associated with the development of the Property."  The trial court correctly concluded that such findings, and others like it, satisfied the statute.  We agree.

There is no language in the LTTEL which compels a municipality to conduct an assessment under subsection 11(b) resulting in a municipal finding that the tax exemption granted under the ordinance was "<u>necessary</u>" to attract the desired development.  The Legislature's choice of the word "importance" rather than "necessity" demonstrates its clear intent to provide municipalities with flexibility in their assessments.  Further, when the Legislature is silent on such a proposition, as it is here, we should not incorporate that proposition by inference.  <u>Brock v. Pub. Serv. Elec. and Gas Co.</u>, 149 N.J. 378, 391 (1997).  We conclude that the ordinance was adopted by the Township in accordance with the plain meaning of the LTTEL, including N.J.S.A. 40A:20-11.  This satisfies the first element of <u>Riggs</u>.

The second question posed by the <u>Riggs</u> analysis, whether the ordinance met a proper legislative purpose, has a simpler answer:  yes.  Our Constitution and our jurisprudence recognize tax exemptions as important tools to facilitate

the construction of affordable housing. The Supreme Court allows municipalities like Hopewell to use available financial incentives like tax exemptions or abatements to facilitate affordable housing construction. In re Adoption of N.J.A.C. 5:96 & 5:97 by N.J. Council on Affordable Housing, 221 N.J. 1 (2015).

Having concluded that this ordinance satisfies the Riggs test, we conclude that the ordinance was proper. Like the trial court, we decline plaintiffs' invitation to replace our traditional deference to a properly enacted municipal ordinance with a "substantial evidence" standard of review.

Plaintiffs' reliance upon Malanga v. Twp. of West Orange, 253 N.J. 291 (2023) for this proposition is misplaced. In Malanga, the Court addressed whether West Orange improperly designated the local public library as an area in need of redevelopment under the Local Redevelopment and Housing Law.[4] The Court ultimately found that West Orange failed to meet the burden of proof established by N.J.S.A. 40A:12A-5(d), which requires two showings. First, there must be "sufficient proof" that targeted areas suffer from specific conditions, including, but not limited to: dilapidation, obsolescence, or overcrowding, or any combination of them. Second, there must be sufficient

---

[4] N.J.S.A. 40A:12A-1 to 40A:12A-49.

proof that the targeted areas "are detrimental to the safety, health, morals, or welfare of the community." The Court found the record lacked "substantial evidence" that the local public library, still in active use, suffered from obsolescence such that it was detrimental to the safety, health, morals, or welfare of the community. The record in that matter showed that the licensed professional planner hired by West Orange did not present sufficient proof to support the West Orange planning board's 3-2 approval of the designation of the area in need of redevelopment, nor West Orange's ultimate adoption of the ordinance authorizing the final designation. The Court concluded that N.J.S.A. 40A:12A-5(d)'s language called for "substantial evidence" to justify taking the community public library for redevelopment purposes.

We consider the record before us. Plaintiffs do not dispute that the Township has complied with every aspect of the LRHL, the statute addressed and interpreted in Malanga. However, the statute at issue here, the LTTEL is different, and must be analyzed on its own merit. While the LRHL identifies specific conditions tied to the public safety, health, and welfare, conditions which must be found before designating an area in need of redevelopment, the LTTEL contains no such requirement. The key distinction lies in the different statutory language and purposes. N.J.S.A. 40A: 12A-5(d) of the LRHL requires

21

"sufficient proof" of the enumerated conditions before the planning board, a quasi-judicial body, can take property for redevelopment purposes. Cox & Koenig, New Jersey Zoning & Land Use Administration § 5-1.1 (2025). The LTTEL, by contrast, involves municipal choices about the adoption of financial incentives to encourage development and allocation of local tax consequences which flow from such choices. When municipalities pass resolutions and ordinances to implement those choices, they are acting purely in their legislative capacity. This exclusively legislative role is separate from the quasi-judicial role municipalities play in reviewing and adopting (or rejecting) the housing policy decisions of their own municipal planning boards. Because courts must interpret statutes as written, giving words their ordinary meaning and significance, Musker, 260 N.J. at 185, we conclude that Malanga's "substantial evidence" holding does not extend to the LTTEL.

### B.

Plaintiffs contend that the trial court committed error by severely constraining discovery. We are unconvinced for the cogent reasons set forth by the trial court in its written decision. We make the following brief observations.

Because we conclude that N.J.S.A. 40A:20-11 does not require the Township to find that a development project could not occur without assistance

from a long-term tax exemption agreement, plaintiffs' focus on the Township's motives, the quality of its economic analysis, or other potentially better development options are not material to whether the terms of the financial agreement satisfy the statutory criteria in N.J.S.A. 40A:20-11. Finally, the record shows plaintiffs' expert's findings and conclusions were presented to the Township's elected officials at the public hearing in February 2022. Plaintiffs had the opportunity to voice their opposition, and Township officials had ample opportunity to consider it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

23